The READ CORPORATION and F.T. Read & Sons, Inc., Plaintiffs–Appellees,

v.

PORTEC, INC., d/b/a Portec/Kolberg Division, Defendant–Appellant.

No. 91–1069.

United States Court of Appeals, Federal Circuit.

July 10, 1992.

Rehearing Denied and Suggestion for Rehearing In Banc Declined Sept. 23, 1992.

Jack R. Pirozzolo, Willcox, Pirozzolo & McCarthy, Boston, Mass., argued for plain-

tiffs-appellees. With him on the brief was Richard L. Binder. Also on the brief was Donald F. Parsons, Jr., Morris, Nichols, Arsht & Tunnell, of Wilmington, Delaware.

Donald R. Dunner, Finnegan, Henderson, Farabow, Garrett & Dunner, Washington, D.C., argued for defendant-appellant. With him on the brief was Barry W. Graham.

Before NIES, Chief Judge, ARCHER, and MICHEL, Circuit Judges.

NIES, Chief Judge.

Portec, Inc., appeals from the May 25, 1990, final judgment, entered upon a jury verdict, of the United States District Court for the District of Delaware, Civil Action No. 88–29–JRR, holding Portec liable for infringement of U.S. Patent No. 4,197,194 (the '194 patent) and U.S. Design Patent No. 263,836 (the '836 patent), and awarding The Read Corporation and F.T. Read & Sons, Inc. (collectively Read) treble damages and attorney fees. The district court's opinion denying Portec's motion for JNOV is reported at *Read Corp. v. Portec,*

*Inc.,* 748 F.Supp. 1078 (D.Del.1990). The district court's opinion granting Read's motion for treble damages and attorney fees is reported at *Read Corp. v. Portec Inc.,* 17 USPQ2d 1243, 1990 WL 265979 (D.Del. 1990). We affirm the judgment with respect to liability for infringement of the '194 patent, reverse the judgment with respect to liability for infringement of the '836 patent and the enhancement of damages, vacate the award with respect to attorney fees, and remand for modification of the injunction and reconsideration of the award of Read's attorney fees in light of this opinion.

## BACKGROUND

James L. Read is the president of Read and the named inventor in both the '194 and '836 patents. The '194 patent is directed to a portable loam screening apparatus for separating fine earth material from coarser materials. The '836 patent is directed to an ornamental design of such a screening apparatus. Below are figures from each of the patents:

Fig. 1 of '194 patent

Fig. 6 of '836 patent

As seen above, the apparatus has a generally rectangular frame 12, made up of "tall end" 14 and "short end" 16 which are joined together by sides. Hitch 34 is attached to side 18 and wheels 36 are attached to the fourth side 20. The wheels are movable relative to the frame between an extended position where the weight of the apparatus is on the wheels, so that the apparatus can be transported, and a retracted position, as shown in Figure 1, so that the weight is transferred to the frame during operation.

In operation, a load of loam and coarse materials is dumped from a payloader over the tall end on to the vibrating screens 30 and 32. The screens are sloped so that,

when material is deposited on them, the finer material passes through the screens while the coarser material rolls off the screens and falls outside the frame next to short end 16. The tall end 14 of the apparatus is completely open (visible in Fig. 6) so that the payloader can drive within the frame to scoop out the finer material deposited on the ground.

Independent claims 2 and 7 of the '194 patent are at issue in this case. Claim 2 reads as follows:[1]

2. A portable screening apparatus for separating coarse material from finer material comprising:

a frame of generally rectangular cross section and having a tall end and a short end joint [sic] by sides, *said short end being closed from an upper edge of said short end to the ground* and the lower portion of said tall end being completely open from the ground to a height sufficiently high to permit a payloader to collect the finer material from within the frame;

said frame at said tall end having a width sufficient to accommodate the shovel of a payloader;

a material separating shaker screen sloping downwardly from near the upper edge of said tall end to near the upper edge of said short end;

*a set of wheels mounted to one of said sides and movable relative to said frame from an operative position for transporting said apparatus to an inoperative position for resting said frame flush on the ground;* and

a trailer hitch mounted to the other of said sides.

(Emphasis added.)

As will become evident *infra*, critical to this case are the claim limitations requiring the short end to be closed "to the ground" and a set of wheels which are "movable relative to said frame" from "an operative position" to "an inoperative position for resting said frame flush on the ground."

U.S. Patent Application Serial No. 947,-380, from which the '194 patent issued, was filed October 2, 1978, with 11 claims. Claim 2 as originally filed did not contain any wheels limitation, and required only that the short end be "closed." The examiner rejected all of the claims under 35 U.S.C. § 103 for obviousness in view of various combinations of references, particularly U.S. Patent No. 3,307,698 to Haffner (Haffner), U.S. Patent No. 1,806,934 to Deister (Deister) and U.S. Patent No. 2,284,692 to Strube (Strube).

In response, Read added to claim 2 (as well as to the other independent claims), the "set of wheels" limitation. No amendment was made to the closed end limitation. In the remarks accompanying the amendment, Read stressed the nonobviousness of the claimed invention based on numerous differences from the prior art including the "closed" short end, which acts as a barrier between the coarse material and the finer material, and the wheels limitation, which allows the apparatus to be transported or stably set on the ground during screening operations.

The record shows that the examiner, in a telephonic interview, agreed to allow the claims if amended to include

limitations more particularly pointing out the relationship of the width and height of the tall end portion of the frame to a payloader and the relation of where the short end's "closed" characteristics begin and end.

Claim 2 and the other independent claims were thereafter amended, by examiner's amendment, to include, among other things, the requirement that the short end be closed "to the ground." The claims were subsequently allowed.

Read has been making screening devices in accordance with its invention since the late 1970's under the name "Read Screen-All." In December of 1984, officials from Portec met with James Read to discuss a possible acquisition of Read by Portec. Those discussions proved fruitless, and

---

**1.** The only difference between claims 2 and 7 is the additional requirement in claim 7 of "a table" within the frame. Since this additional limitation is irrelevant to the issues in this case, we will limit our discussion to claim 2 only.

Portec began to consider whether it could produce a device to compete with the Read Screen–All.

In doing so, Portec obtained a written opinion by patent attorney Emory Groff, Jr., concerning the '194 and '836 patents in January of 1985. This opinion is very general, as it was prepared before Portec had done any significant development work. With respect to the '836 patent, Groff set forth the general test for design patent infringement, and noted that "[d]esign patents are generally narrowly construed by the courts." With respect to the '194 patent, Groff reviewed the patent and the file history, and concluded that "the limitations concerning the set of wheels, the hitch, the fully closed short end and the tall end opening extending to the ground are all critical limitations." After a brief discussion of the doctrine of equivalents, Groff concluded that "the claims of the patents could be circumvented to avoid infringement, however, whether or not the end result would produce an apparatus as efficient and commercially appealing as the Read devices, is questionable."

Nothing further was done by Portec concerning development of a portable screening device until late 1986. By that time, the popularity of the Read Screen–All had increased further, and Portec renewed its interest in designing a device to compete with the Screen–All. This interest resulted in several meetings between Portec engineer Gerald Dahlinger and patent attorney Brett Valiquet in January and February of 1987. Notes from those meetings indicate that Dahlinger and Valiquet discussed several possibilities for designing around the claims of the '194 patent, including "wheels which are not movable relative to the frame and not moving the frame onto the ground," and a "completely open short end."

Over the next several months, Portec developed design drawings for its proposed portable screening device. This screening device had two features designed to avoid infringement of the '194 patent: (1) the bottom of the short end ended about six inches from the ground; and (2) fixed wheels and a "footpad" attached to each side of the frame replaced the retractable wheels. The footpads were long metal bars which extended the entire length of the sides and which were movable relative to the frame by hydraulic cylinders. The footpads could be extended so as to lift the wheels off the ground, placing the weight of the device on the footpads.

Drawings of this design were given to Valiquet for an analysis of infringement of both the '194 and '836 patents. Valiquet concluded, in a written opinion dated September 25, 1987, that Portec's proposed device did not infringe either patent. With respect to the '194 patent, after discussing the details of the claims and of Portec's device, Valiquet stated:

> During prosecution before the U.S. patent office, Read was required by the patent office to add the limitation to his claims that the short end extends to the ground. Also, Read voluntarily added to his patent claims the concept of moving the frame so that it could be flush on the ground through use of movable wheels. Since these distinctions were added in view of prior art cited by the Examiner, Read cannot argue that Portec has any type of equivalent structure.

With respect to the '836 patent, after discussing the details of various visual aspects of both the '836 design and Portec's proposed design, Valiquet concluded:

> In view of the forementioned visual distinctions and other probable visual distinctions not specifically mentioned herein, it is clear that the Portec unit will create a visually distinct and different impression than that shown in the drawing figures of the Read design patent.

After preparing final drawings of its screening device, Portec sent these drawings to Valiquet, who, in a letter dated November 25, 1987, again confirmed his opinion of noninfringement. Portec began making its portable screening device shortly thereafter.

Read brought the present suit in January of 1988, charging Portec with infringement of the '836 patent and claims 2 and 7 of the '194 patent. Portec denied infringe-

ment and also asserted that the two patents were invalid on various grounds.

During pendency of the suit, Portec made several changes to its device in order to further distinguish it from that of the '194 and '836 patents. One of these changes arose from the discovery by Portec's customers that its device worked satisfactorily with only the front footpad (the one adjacent the hitch) lowered, so that at least part of the weight of the device remained on the wheels. Thus, Portec began making a new device which had only a single footpad located on the side adjacent to the hitch. The other changes were ornamental, designed to further make Portec's device, particularly the fender portion, look different from that of the '836 patent. (See appendix.)

In response to interrogatories, the jury held each patent valid and infringed by each of Portec's devices, found that the infringement was willful, and found damages in the amount of $1,324,782. Read subsequently moved for and was granted treble damages and attorney fees. The district court entered judgment in favor of Read in the amount of $3,974,346 in damages plus $1,235,685.11 in attorney fees.

On appeal Portec challenges the district court's denial of JNOV on the issues of (1) infringement of the '194 patent; (2) validity and infringement of the '836 patent; and (3) the award of enhanced damages and attorney fees.

## DISCUSSION

### A. *Standard of Review of Infringement*

■ To overturn a jury verdict, the party against whom the verdict was rendered must satisfy either prong of the following standard:

[1] that the jury's findings [of disputed material factual issues], presumed or express, are not supported by substantial evidence or,

[2] if they were, that the legal conclusion(s) implied from the jury's verdict cannot in law be supported by those findings. [Citations omitted.]

*Perkin–Elmer Corp. v. Computervision Corp.*, 732 F.2d 888, 893, 221 USPQ 669, 673 (Fed.Cir.), *cert. denied*, 469 U.S. 857, 105 S.Ct. 187, 83 L.Ed.2d 120 (1984). The "substantial evidence" standard for reviewing a finding of fact raises the question whether the jury's resolution of a factual dispute was *reasonable. See Dana Corp. v. IPC Ltd. Partnership*, 860 F.2d 415, 417, 8 USPQ2d 1692, 1694 (Fed.Cir.1988), *cert. denied*, 490 U.S. 1067, 109 S.Ct. 2068, 104 L.Ed.2d 633 (1989). A finding of fact must stand unless appellant shows that on the entirety of the evidence of record, including that which detracts from the weight of the favorable evidence, and taking into account the required quantum of proof, no reasonable juror could have made the finding. *See Perkin–Elmer*, 732 F.2d at 893, 221 USPQ at 673; *Railroad Dynamics, Inc. v. A. Stucki Co.*, 727 F.2d 1506, 1512–13, 220 USPQ 929, 936 (Fed.Cir.), *cert. denied*, 469 U.S. 871, 105 S.Ct. 220, 83 L.Ed.2d 150 (1984). The second prong of the JNOV standard requires the court to review the issues of law necessary to the verdict. An issue of law which inheres in the verdict is reviewed *de novo* by the district court. *See Dana Corp.*, 860 F.2d at 417–18, 8 USPQ2d at 1694–95. On appeal to determine the correctness of the district court's ruling on JNOV, we reapply the JNOV standard anew. *See Newell Cos. v. Kenney Mfg. Co.*, 864 F.2d 757, 762, 9 USPQ2d 1417, 1421 (Fed.Cir.1988), *cert. denied*, 493 U.S. 814, 110 S.Ct. 62, 107 L.Ed.2d 30 (1989).

### B. *The '194 Patent*

■ The determination of infringement is a two-step process. First, the language of the claim must be interpreted. Second, the accused device must be compared to the claim language as interpreted. *SSIH Equipment S.A. v. United States Int'l Trade Comm'n*, 718 F.2d 365, 376, 218 USPQ 678, 688 (Fed.Cir.1983). If the accused device contains all of the limitations specified in the claim, infringement is made out (absent considerations not pertinent here). If some limitations of the claim are not literally satisfied, infringement may be found in appropriate circumstances

under the doctrine of equivalents. *Pennwalt Corp. v. Durand–Wayland, Inc.*, 833 F.2d 931, 935–36, 4 USPQ2d 1737, 1738–40 (Fed.Cir.1987) (in banc), *cert. denied*, 485 U.S. 961, 1009, 108 S.Ct. 1226, 1474, 99 L.Ed.2d 426, 703 (1988).

◼ Under the doctrine of equivalents, a patentee must show that the accused device performs substantially the same function, in substantially the same way, to achieve substantially the same result. *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 607, 70 S.Ct. 854, 855, 94 L.Ed. 1097 (1950). "The 'substantially the same way' prong of the test may be met if an equivalent of a recited limitation has been substituted in the accused device." *Malta v. Schulmerich Carillons, Inc.*, 952 F.2d 1320, 1325–26, 21 USPQ2d 1161, 1164–65 (Fed.Cir.1991), *cert. denied*, — U.S. —, 112 S.Ct. 2942, 119 L.Ed.2d 566 (1992). Thus, infringement requires that each limitation of a claim be met exactly or by a substantial equivalent.[2]

In the present case, Portec argues that no reasonable jury could have found claims 2 and 7 of the '194 patent, properly construed, to be infringed, either literally or under the doctrine of equivalents. While acknowledging that all other limitations are met, Portec maintains (1) the "short end closed to the ground" limitation must be interpreted as meaning *completely* closed, *i.e.*, actually touching the ground, and (2) the claim language describing the structure for converting the device from a portable to a rest position covers only retractable wheels. Because its device does not satisfy this claim language, Portec contends

there is no literal infringement. Furthermore, Portec argues that the prosecution history of the '194 patent prevents a finding that Portec's substitution of a short end terminating six inches above the ground and its substitution of one or two retractable footpads for retractable wheels are equivalents to the claimed structure and thus there can be no infringement of claims 2 and 7 under the doctrine of equivalents.

◼ Claim interpretation is a question of law for the court. *Unique Concepts, Inc. v. Brown*, 939 F.2d 1558, 1561, 19 USPQ2d 1500, 1503 (Fed.Cir.1991); *Senmed, Inc. v. Richard–Allan Medical Indus., Inc.*, 888 F.2d 815, 818, 12 USPQ2d 1508, 1511 (Fed. Cir.1989); *Moleculon Research Corp. v. CBS, Inc.*, 793 F.2d 1261, 1270, 229 USPQ 805, 811 (Fed.Cir.1986), *cert. denied*, 479 U.S. 1030, 107 S.Ct. 875, 93 L.Ed.2d 829 (1987); *SSIH*, 718 F.2d at 376, 218 USPQ at 688. As the Supreme Court mandated as early as *Winans v. Denmead*, 56 U.S. (15 How.) 330, 14 L.Ed. 717 (1854):

[T]wo questions arise. The first is, what is the thing patented; the second, has that thing been constructed, used, or sold by the defendants.

The first is a question of law, to be determined by the court, construing the letters-patent, and the description of the invention and specification of claim annexed to them. The second is a question of fact, to be submitted to a jury.

56 U.S. at 338. Where the court's interpretation is not set forth in its instructions to the jury,[3] the court must perform its role

2. As a matter of terminology under the doctrine of equivalents, we will speak only of *infringement of a claim* and of an *equivalent to a limitation* of the claim. *See Malta*, 952 F.2d at 1325–26, 21 USPQ2d at 1164–65. Specifically, we avoid speaking of "equivalency" between the accused device and the patented invention. To speak of "equivalency" to the invention creates confusion and is technically inaccurate. The statutory requirement for liability is "infringement" of a patent, not "equivalency" between devices or methods. 35 U.S.C. § 281. Equivalency to limitations of the claim must be the focus of the inquiry, particularly in jury trials. *Malta*, 952 F.2d at 1327, 21 USPQ2d at 1166. Otherwise, laymen may be led to comparison of devices, rather than between the accused device

and the claim, and to rely on generalities in the overall purpose of the devices. For example, a pen and a pencil may for many purposes or uses be generally equivalent, but claim limitations drawn to a pen would not under the doctrine of equivalents cover a pencil and *vice versa*.

3. *See Jamesbury Corp. v. Litton Indus. Prods., Inc.*, 756 F.2d 1556, 1564–65, 225 USPQ 253, 259–60 (Fed.Cir.1985) ("[district] court should instruct the jury on what the claim means"); *Structural Rubber Prods. Co. v. Park Rubber Co.*, 749 F.2d 707, 721, 223 USPQ 1264, 1275 (Fed. Cir.1984) ("claim interpretation [is] matter for the court to decide and to make known to the

of deciding this issue of law in ruling on the JNOV motion. *See Connell v. Sears, Roebuck & Co.,* 722 F.2d 1542, 1550, 220 USPQ 193, 200 (Fed.Cir.1983) (while not *reversible* error to submit legal issue to jury, "question of law [is] decidable by the court in response to a motion for JNOV"). The district court here, in ruling on the JNOV, held that the word "to" in context meant the short end may be either on or near the ground.

 One must look to the language of the claim, and the patent's specification and prosecution history to properly interpret the scope of a patent claim. *Whittaker Corp. v. UNR Indus., Inc.,* 911 F.2d 709, 711, 15 USPQ2d 1742, 1744 (Fed.Cir.1990). In light of this review, we hold that the words "closed to the ground" do not require the short end to actually touch the ground. As described in the specification, the short end "acts to keep the separated loam and coarse material separate until the loam is carried away." The prosecution history describes the short end's function of acting as a barrier to assist the payloader's shovel in scooping out the separated loam. Thus, the specification indicates that an "end closed to the ground" means sufficiently closed to achieve those functions. We also note that, in the same paragraph of the claim, the word "completely" precedes the word "open." In contrast, the word "completely," does not similarly precede the word "closed" and the examiner did not even suggest this additional limitation for "closed" as he did respecting "open." Such limitation would describe the short end only when the wheels are retracted. When extended, the claimed invention and the accused device are identical with respect to the *frame* in both devices being closed to the ground. We conclude, therefore, as a matter of law, that the district court was correct in its interpretation of this language. Further, viewing the evidence presented at trial in a light most favorable to Read, we conclude that the jury could reasonably find therefrom that

the short end of the Portec device met this claim language literally.

The second limitation in dispute requires that the wheels be "movable relative to said frame" from an operative to "an inoperative position for resting said frame flush on the ground." The specification and drawings of the '194 patent show only wheels that lift up. Read argues nonetheless that this limitation is met literally by Portec's fixed wheels and extendable footpad structure. Although in Portec's device the frame (*i.e.,* footpad(s)) moves, rather than the wheels, this limitation per Read is literally met because the "movability" of the wheels is in terms of "movable" *relative* to the frame. We disagree with this characterization and conclude that substantial evidence does not support a finding that the claim language "wheels ... movable relative to said frame" literally applies to Portec's machines. The question then becomes whether substantial evidence supports a finding that the substituted structure of one or two retractable footpads is equivalent to the retractable wheels required by the claim.

In challenging infringement under the doctrine of equivalents Portec intermingles arguments (1) respecting the interpretation of the claim language in accordance with the prosecution history which would negate equivalency with (2) prosecution history estoppel which prevents a finding of infringement even though the substituted structure is in fact equivalent. We will attempt to disentangle the two concepts.

Respecting equivalency between the required retractable wheels and the retractable footpads of the accused device, Read's movable wheels allow for the heavy weight of the loaded machine to be taken off the wheels and provide for stability of the machine during screening operations by placing the frame "flush on the ground." There is ample evidence of record showing that these same effects are achieved by the one or two footpad arrangement of Portec's device, albeit less effectively by the

jury by its instructions"). *But see Tol–O–Matic, Inc. v. Proma Produkt–Und Marketing Gesellschaft M.b.H.,* 945 F.2d 1546, 20 USPQ2d 1332 (Fed.Cir.1991). We endorse the earlier precedent.

one footpad arrangement. When extended, the footpad becomes an extension of the frame "flush on the ground" which removes weight from the wheels. While Read stated during prosecution that failure would be likely where *all* of the weight is distributed to the wheels, except at a very high cost of construction, this statement does not translate, as argued by Portec, into a requirement that to find equivalency none of the weight can be distributed to the wheels during the device's operation. The claim does not exclude some weight remaining on the wheels. In sum, a finding of equivalency to the required limitation is supported by substantial evidence.

■ With respect to prosecution history estoppel, Portec argues that Read added the movable wheels limitation in response to the Examiner's rejection of several of Read's original claims which did not specify any wheels. However, in the same rejection, the Examiner refused to allow claims which *had* the movable wheels limitation, based upon the very same prior art which was cited against the claims which lacked the movable wheels limitation. Additionally, other prior art was cited which disclosed retractable wheels. Clearly, adding a set of wheels to the claims, movable or not, could not have been the basis for allowance. Indeed, Portec does not assert that Read argued for patentability over any prior art reference solely based upon the movable wheels limitation. Rather, Portec urges that estoppel arises because Read pointed out during prosecution that some references did not have this feature.

Every statement made by a patentee during prosecution to distinguish a prior art reference does not create a *separate* estoppel. Arguments must be viewed in context. In context, Read distinguished, for example, the Deister reference because of a wealth of differences. The Deister reference discloses a small screening device which has wheels as tall as the device itself, thus:

Read pointed out differences not only respecting the wheels, including that they were not collapsible and were in a different location (on the side, not the end) but also marked differences in *other* parts of the structure. Thus, any estoppel created by Portec's argument encompasses *all* of these *combined* distinctions of Deister and not an estoppel respecting *each* of the *individual* differences, *e.g.*, that any device with non-movable wheels cannot infringe.[4] That feature in itself was never asserted to be the basis for patentability over Deister. Thus, there is no basis for an assertion that

4. Acceptance of Portec's argument respecting estoppel for each item in a patentee's list of distinctions between the invention and a prior art reference would mean that the less material a prior art reference, the more the estoppel

merely by a patentee's pointing out numerous differences. This turns an equitable doctrine into an illogical mechanical rule and would allow easily distinguishable prior art, here Deister, to emasculate the doctrine of equivalents.

Read is seeking to recapture anything which was surrendered to obtain the patent, the essence of the prosecution history estoppel. *Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.*, 944 F.2d 870, 882, 20 USPQ2d 1045, 1054 (Fed.Cir. 1991).

In sum, nowhere in the prosecution history does Read limit its claims so as not to extend to equivalents of the movable wheels limitation.

Inasmuch as all but one of the limitations of the asserted claims is met literally, and that one is met equivalently, the accused structures satisfy the "same way" requirement of *Graver Tank. See Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1539, 19 USPQ2d 1367, 1372 (Fed.Cir.1991). No argument is made that the Portec device does not perform the same overall work to achieve the same overall result. The denial of the motion for JNOV to overturn the verdict of infringement of the '194 patent must be affirmed.

### C. *The '836 Patent*

Portec asserts that the district court erred in denying JNOV on the issues of validity and infringement of the '836 patent. Having reviewed the evidence of record, we agree with Portec that substantial evidence does not support the jury's verdict of infringement under the correct legal standard for infringement of a design patent.

■ The patent statute in 35 U.S.C. § 171 provides for patentability of "new, original and ornamental designs." The nonornamentality or functionality of the parts of a device does not necessarily preclude patentability of the overall design. *Avia Group Int'l, Inc. v. L.A. Gear California, Inc.*, 853 F.2d 1557, 1563, 7 USPQ2d 1548, 1553 (Fed.Cir.1988). Nevertheless, in that case, "it is the non-functional, design aspects that are pertinent to determinations

of infringement." *Lee v. Dayton–Hudson Corp.*, 838 F.2d 1186, 1188, 5 USPQ2d 1625, 1627 (Fed.Cir.1988) (footnote omitted).

Portec argues that Mr. Read admitted that the design of the device was functional except for the shape of the fenders, that Read submitted no evidence comparing ornamental features, that the only features in common are functional, and, thus, infringement was not proved. Read counters that the testimony of its witness, Mr. Read,[5] and the Portec device which was observed by the jury constitute substantial evidence sufficient to support the verdict under the standard set out in *Gorham Co. v. White*, 81 U.S. (14 Wall.) 511, 528, 20 L.Ed. 731 (1872), namely that:

> [I]f, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase on supposing it to be the other, the first one patented is infringed by the other.

■ Read misperceives the holding of *Gorham. Gorham* sets forth the standard of infringement of an ornamental design. In *Gorham,* however, there was no preliminary issue respecting what the ornamental features of the design in issue were. The *Gorham* design patent claimed only the scroll work on the handle portion of table flatware. The tines or the bowl of the utensils did not appear in the patent. Thus, all elements forming the claimed design were ornamental. Where this is not the case, that is, a design is composed of functional as well as ornamental features, to prove infringement a patent owner must establish that an ordinary person would be deceived by reason of the common features in the claimed and accused designs which are ornamental. *Lee,* 838 F.2d at 1188, 5 USPQ2d at 1627.

---

5. The testimony of Mr. Read, respecting infringement consists of the following:

Counsel for Read: In the eye of an ordinary observer, giving such attention as a purchaser usually gives, is the resemblance of [Portec's device] to the design disclosed in your '836 design patent such as to cause or induce such an observer to purchase [Portec's device] thinking it to be the design disclosed in your design patent?

Mr. Read: Yes.

Infringement of the '836 patent, thus, depends upon (1) the similarity of the ornamental features of the Portec device and the patented design, and (2) the likelihood that an ordinary person would be confused because of such ornamental similarity. A verdict for the plaintiff cannot stand where the plaintiff failed wholly to offer proof respecting an element of its cause of action. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25, 106 S.Ct. 2548, 2552–54, 91 L.Ed.2d 265 (1986) (summary judgment, like directed verdict, appropriate in the absence of proof of an essential element of plaintiff's case). Because Read failed to submit any evidence directed to either element of infringement, no substantial evidence supports the jury's finding that Portec infringed the '836 design patent.[6] Thus, the court erred in denying Portec's motion for JNOV.

The verdict form of record shows that the amount of damages was attributed to infringement of the '194 patent; nothing was awarded for infringement of the '836 patent. Inasmuch as the quantum of damages prior to enhancement is not at issue, we need not remand for redetermination of damages. However, the injunction must be modified on remand.

### D. *Enhanced Damages*

Under section 284 of Title 35, damages may be enhanced *up to* three times the compensatory award. An award of enhanced damages for infringement, as well as the extent of the enhancement, is committed to the discretion of the trial court. While no statutory standard dictates the circumstances under which the district court may exercise its discretion, this court has approved such awards where the infringer acted in wanton disregard of the patentee's patent rights, that is, where the infringement is willful. *Great Northern Corp. v. Davis Core & Pad Co.*, 782 F.2d 159, 166, 228 USPQ 356, 360 (Fed.Cir. 1986). *See also Mathis v. Spears*, 857 F.2d 749, 754, 8 USPQ2d 1029, 1033 (Fed.Cir. 1988) ("Provisions for increased damages

... are available as deterrents to blatant, blind, willful infringement of valid patents."). On the other hand, a finding of willful infringement does not mandate that damages be enhanced, much less mandate treble damages. *Modine Mfg. Co. v. Allen Group, Inc.*, 917 F.2d 538, 543, 16 USPQ2d 1622, 1625 (Fed.Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 2017, 114 L.Ed.2d 103 (1991).

The paramount determination in deciding to grant enhancement and the amount thereof is the egregiousness of the defendant's conduct based on all the facts and circumstances. *See Rite–Hite Corp. v. Kelley Co.*, 819 F.2d 1120, 1125–24, 2 USPQ2d 1915, 1919 (Fed.Cir.1987). The court must consider factors that render defendant's conduct more culpable, as well as factors that are mitigating or ameliorating. *Compare Ivac Corp. v. Terumo Corp.*, 18 USPQ2d 1637, 1639–40, 1990 WL 180202 (S.D.Cal.1990) (Treble damages are appropriate when it is clear that defendant showed no good faith at the time infringement commenced, made no effort to follow the advice of patent counsel or alter the infringing device, and showed bad faith in litigation.); *with Datascope Corp. v. SMEC, Inc.*, 14 USPQ2d 1071, 1074, 1990 WL 10345 (D.N.J.1990) ("A fifty-percent enhancement of damages is appropriate here. Although SMEC's infringement was willful, it was not blatant."); *and Chisum v. Brewco Sales & Mfg.*, 726 F.Supp. 1499, 13 USPQ2d 1657, 1668 (W.D.Ky.1989) ("The lost profits will however be doubled rather than tripled, since we find that Brewer's actions were willful, but not so egregious as to warrant trebling of the damages."). In *Bott v. Four Star Corp.*, 807 F.2d 1567, 1572, 1 USPQ2d 1210, 1213 (Fed.Cir.1986), three factors were identified for consideration in determining when an infringer "acted in [such] bad faith as to merit an increase in damages awarded against him":

---

6. Portec's arguments do not require us to address the denial of its motion for JNOV respecting the issue of validity of the patent after a finding of noninfringement.

(1) whether the infringer deliberately copied the ideas or design of another;[7]
(2) whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed; and
(3) the infringer's behavior as a party to the litigation.

The *Bott* factors are not all inclusive. In addition, other circumstances which courts appropriately have considered, particularly in deciding on the extent of enhancement, are:

(4) Defendant's size and financial condition. *St. Regis Paper Co. v. Winchester Carton Corp.*, 410 F.Supp. 1304, 1309, 189 USPQ 514, 518 (D.Mass.1976) ("[D]ouble damages [appropriate]. If defendant were the giant and plaintiff the small independent, I would make it treble. . . ."); *Bott v. Four Star Corp.*, 229 USPQ 241, 254 (E.D.Mich.1985) ("[a] threefold increase in damages would severely affect [defendant's] financial condition."), *vacated and remanded for clarification of damage amount*, 807, F.2d 1567, 1 USPQ2d 1210 (Fed.Cir.1986); *Lightwave Technologies, Inc. v. Corning Glass Works*, 19 USPQ2d 1838, 1849 (S.D.N.Y.1991) (Defendant "can withstand some increase in damages, but not treble damages."); *Kori Corp. v. Wilco Marsh Buggies and Draglines, Inc.*, 561 F.Supp. 512, 533, 217 USPQ 1302, 1312 (E.D.La.1982) (Exemplary damages "should not unduly prejudice the defendants' non-infringing business."), *aff'd*, 761 F.2d 649, 225 USPQ 985 (Fed.Cir.), *cert. denied*, 474 U.S. 902 [106 S.Ct. 230, 88 L.Ed.2d 229] (1985).
(5) Closeness of the case. *Modine Mfg. Co. v. The Allen Group*, 917 F.2d at 543, 16 USPQ2d at 1626 (No abuse of discretion to award no enhanced damages on the ground that willfulness was "sufficiently close on the evidence."); *Crucible, Inc. v. Stora Kopparbergs Bergslags AB*, 701 F.Supp. 1157, 1164, 10 USPQ2d

1190, 1196 (W.D.Pa.1988) ("[B]ecause the court still considers the [willfulness] question to be a close one . . . double, and not treble damages are appropriate.").

(6) Duration of defendant's misconduct. *Bott v. Four Star Corp.*, 229 USPQ 241, 255 (E.D.Mich.1985) (For sales prior to the appellate court's affirmance of the liability judgment, damages increased by 20%; for sales after the affirmance, damages doubled.), *vacated and remanded for clarification of damage amount*, 807 F.2d 1567, 1 USPQ2d 1210 (Fed.Cir. 1986).

(7) Remedial action by the defendant. *Intra Corp. v. Hamar Laser Instruments, Inc.*, 662 F.Supp. 1420, 1439, 4 USPQ2d 1337, 1351 (E.D.Mich.1987) (Damages only doubled because defendant "voluntarily ceased manufacture and sale of infringing systems during the pendency of this litigation. . . ."), *aff'd without opinion*, 862 F.2d 320 (Fed.Cir. 1988), *cert. denied*, 490 U.S. 1021 [109 S.Ct. 1746, 104 L.Ed.2d 183] (1989).

(8) Defendant's motivation for harm. *American Safety Table Co. v. Schreiber*, 415 F.2d 373, 379, 163 USPQ 129, 133 (2d Cir.1969) ("[D]efendants' infringing acts, although deliberate and with knowledge of plaintiff's rights, could not be termed pernicious due to prevailing 'economic pressure in the form of customer dissatisfaction.' "), *cert. denied*, 396 U.S. 1038 [90 S.Ct. 683, 24 L.Ed.2d 682] (1970).

(9) Whether defendant attempted to conceal its misconduct. *Russell Box Co. v. Grant Paper Box Co.*, 203 F.2d 177, 183, 97 USPQ 19, 23 (1st Cir.) (Enhanced damages supported in part by findings "that the defendant had failed to preserve its records and had failed to cooperate as it should at the trial on the issue of damages."), *cert. denied*, 346 U.S. 821 [74 S.Ct. 37, 98 L.Ed. 347] (1953).

Use of these factors in patent cases is in line with punitive damage considerations in

7. "Ideas" and "design" would encompass, for example, copying the commercial embodiment,

not merely the elements of a patent claim.

other tort contexts.[8]

■ Inasmuch as a finding of willful infringement does not mandate enhancement of damages, the above factors taken together assist the trial court in evaluating the degree of the infringer's culpability and in determining whether to exercise its discretion to award enhanced damages and how much the damages should be increased. To enable appellate review, a district court is obligated to explain the basis for the award, particularly where the maximum amount is imposed. For the latter, the court's assessment of the level of culpability must be high. 5 Donald S. Chisum, *Patents* § 20.03[4][b][vi] (1991).

■ In its award of enhanced damages, the district court here relied on Portec's "copying," the willful nature of Portec's infringement, and Portec's "manipulative" litigation strategy, which the court said was "reflective of the dubiousness of Portec's assertions that it produced its devices with a good faith belief in the innocence of its action." 17 USPQ2d at 1247.

Throughout its brief to this court, Read stresses Portec's "copying" of the Read Screen–All as evidence of willful and wanton infringement. The district court also characterized Portec's activity as "copying," and criticized Portec heavily for doing so. Such a characterization is unwarranted. Certainly the Read Screen–All served as the starting point for Portec's design efforts. And certainly the purpose of Portec's efforts was to make a device which would compete with the Read Screen–All. However, the undisputed evidence of record shows that Portec made specific changes deemed adequate by counsel to avoid infringement of both of Read's patents. We have often noted that one of the benefits of the patent system is the incentive it provides for "designing around" patented inventions, thus creating new innovations. *See Slimfold Mfg. Co. v. Kinkead Indus., Inc.*, 932 F.2d 1453, 1457, 18 USPQ2d 1842, 1845–46 (Fed.Cir.1991); *State Indus., Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1235–36, 224 USPQ 418, 424 (Fed.Cir.1985).

Of course, determining when a patented device has been "designed around" enough to avoid infringement is a difficult determination to make. One cannot know for certain that changes are sufficient to avoid infringement until a judge or a jury has made that determination. In the present case, the jury found that the changes made by Portec were not sufficient to avoid infringement of either patent, and we have herein reversed the judgment respecting infringement of the '836 patent and affirmed the judgment respecting infringement of the '194 patent. Portec is thus liable for damages caused by its miscalculation respecting infringement of the '194 patent. The question which must first be answered here with respect to enhanced damages is whether Portec proceeded without a reasonable belief that it would not be held liable for infringement.

■ Willfulness is a determination as to a state of mind. One who has actual notice of another's patent rights has an affirmative duty to respect those rights. *Rolls–Royce, Ltd. v. GTE Valeron Corp.*, 800 F.2d 1101, 1109, 231 USPQ 185, 191 (Fed.Cir.1986). That affirmative duty normally entails obtaining advice of legal counsel although the absence of such advice does not mandate a finding of willfulness. *See Kloster Speedsteel AB v. Crucible, Inc.*, 793 F.2d 1565, 1579, 230 USPQ 81, 91 (Fed.Cir.1986) ("Though it is an important consideration, not every failure to seek an opinion of competent counsel will mandate an ultimate finding of willfulness."), *cert. denied*, 479 U.S. 1034, 107 S.Ct. 882, 93 L.Ed.2d 836 (1987). Those

---

**8.** *See, e.g.,* the recent case of *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 900–01 (Tenn.1992), where the court stated that, in determining the amount of a punitive damage award, the factfinder should consider, among other factors: de-

fendant's size and financial condition; the reprehensibility of defendant's conduct; the duration of defendant's misconduct; whether defendant attempted to conceal his misconduct; whether defendant had been punitively sanc-

cases where willful infringement is found despite the presence of an opinion of counsel generally involve situations where opinion of counsel was either ignored or found to be incompetent. *See Datascope Corp. v. SMEC, Inc.,* 879 F.2d 820, 828–29, 11 USPQ2d 1321, 1326–27 (Fed.Cir.1989), *cert. denied,* 493 U.S. 1024, 110 S.Ct. 729, 107 L.Ed.2d 747 (1990); *Kori Corp. v. Wilco Marsh Buggies & Draglines, Inc.,* 761 F.2d 649, 656–57, 225 USPQ 985, 989 (Fed.Cir.), *cert. denied,* 474 U.S. 902, 106 S.Ct. 230, 88 L.Ed.2d 229 (1985). This precedent does not mean a client must itself be able to evaluate the legal competence of its attorney's advice to avoid a finding of willfulness. The client would not need the attorney's advice at all in that event. That an opinion is "incompetent" must be shown by objective evidence. For example, an attorney may not have looked into the necessary facts, and, thus, there would be no foundation for his opinion. *Datascope,* 879 F.2d at 828–29, 11 USPQ2d at 1326–27. A written opinion may be incompetent on its face by reason of its containing merely conclusory statements without discussion of facts or obviously presenting only a superficial or off-the-cuff analysis. *Underwater Devices, Inc. v. Morrison–Knudsen Co.,* 717 F.2d 1380, 1390, 219 USPQ 569, 577 (Fed. Cir.1983).

In the present case, Portec obtained at least two *independent* written detailed opinions of unrelated patent counsel and engaged in numerous conferences with its lawyers on the matter. The defenses put forth by Portec in this suit track defenses set forth in these opinions and required full trial, which supports their good faith.[9] Despite these facts, the jury found that Portec had willfully infringed both the '194 and the '836 patents. The district court, in its opinion granting Read's motion for treble damages and attorney fees, discussed at length Portec's conduct relating to the willfulness issue. Reviewing the "evidence" which the district court relied on as

allegedly showing the willfulness of Portec's conduct, as well as other evidence cited by Read in support of the jury verdict, we can only conclude that the jury's finding of willfulness is not supported by substantial evidence.. No reasonable juror could find the asserted proof of willfulness rose to the. quantum of clear and convincing evidence.

The district court indicated that Portec failed to heed the advice of its counsel. In support of this contention, the district court cites the January 1985 opinion of Groff as advising Portec that he "doubted" whether a device sufficiently modified to avoid infringement would be "as efficient and commercially appealing." This appears to be a misunderstanding of Groff's opinion. Groff stated unequivocally the patents "could be circumvented," but said it was *questionable* whether a device modified to avoid infringement would be as *efficient* or *commercially appealing.* However, the fact is that at the time Groff rendered his opinion, Portec had not yet begun design of any device, and thus Groff had no idea whether Portec could design a commercially acceptable device that avoided infringement. .

The district court criticized the opinion of Valiquet because Valiquet admitted at trial that he performed no specific . *legal* research prior to rendering the opinion. The district court was also of the view that Valiquet's opinion was incompetent because it failed to discuss infringement under the. doctrine of equivalents. Further, the district court criticized Portec for not giving Groff's opinion to Valiquet.

None of these criticisms are justified. Valiquet was a patent attorney with many years of experience. Failure to perform legal research on the basic concepts of literal infringement, the doctrine of equivalents, and prosecution history estoppel does not *per se* make the opinion of a lawyer who specializes in patents incompetent.

---

tioned previously for the same acts; and defendant's motivation for harm.

9. An opinion of counsel, of course, need not unequivocally state that the client will not be held liable for infringement. An honest opinion

is more likely to speak of probabilities than certainties. A good test that the advice given is genuine and not merely self-serving is whether the asserted defenses are backed up with viable proof during trial which raises substantial questions, as here.

Moreover, the district court was incorrect when it stated that Valiquet did not consider the doctrine of equivalents. Valiquet's opinion included the following:

During prosecution before the U.S. patent office, Read was required by the patent office to add the limitation to his claims that the short end extends to the ground. Also, Read voluntarily added to his patent claims the concept of moving the frame so that is could be flush on the ground through use of movable wheels. *Since these distinctions were added in view of prior art cited by the Examiner, Read cannot argue that Portec has any type of equivalent structure.* [Emphasis added.]

The district court maintained that this portion of Valiquet's opinion was directed solely to the question of literal infringement. We disagree. The substance of this analysis with its reference to "prior art" and "equivalent structure" can only relate to infringement under the doctrine of equivalents.

Further, the failure to give the first lawyer's opinion to Valiquet is a plus, not a minus. Valiquet was not influenced thereby and was able to make his own *independent* evaluation.

The most important consideration, however, is that nothing in Valiquet's letter would alert a client to reject the letter as an obviously bad opinion. Indeed, his opinion on infringement of the '836 patent was on the mark. More importantly, the opinion was detailed not merely conclusory. On finalization of the drawings, Valiquet reviewed the matters again. Portec sought professional advice on making a competing device which avoided the patent. The monetary exposure of his client required no less from Valiquet than the soundest advice he could offer, not merely to avoid *enhanced* damages, but *all* damages. Counsel's opinion, in effect, has been treated inappropriately and unfairly as part of a scheme to avoid *enhanced damages only.*

Finally, the district court criticized Valiquet's September 25, 1987, opinion, because it was allegedly inconsistent with an "opinion" given in February of 1987. Specifically, the district court noted that in February, Valiquet and Dahlinger of Portec were discussing the use of a "completely" open short end to avoid infringement. In contrast, the September 25, 1987, opinion letter concluded that a device with only about a six-inch opening on the short end avoided infringement.

In February of 1987, Portec had developed no specific designs for a device. Whatever discussions Valiquet had with Dahlinger in February of 1987 can hardly be characterized as an "opinion" on the structure in issue; hand-written notes made during the discussions merely describe general avenues by which the '194 patent could be avoided. In fact, those notes describe other possibilities for avoiding infringement of the '194 patent, such as the use of a horizontal shaker screen. The fact that Portec later designed a device which incorporated some, but not all, of the design modifications first discussed by Valiquet and Dahlinger, and that Valiquet concluded that the resulting device was not an infringement, does not render his final opinion inconsistent.

In sum, upon review of the record before us, we hold that there is insufficient evidence from which a *reasonable* jury could find that Portec's infringement was willful. Inasmuch as there is no infringement of the '836 patent, a finding of willful infringement with respect to that patent necessarily drops out of the case. That counsel's opinion turned out to be contrary to our judgment with respect to the '194 patent does not make his advice regarding that patent incompetent. Read cannot point to any substantial evidence which indicates that Portec did not have a good faith belief that it was not infringing, because it had successfully "designed around" the '194 patent. Thus, the factors of willful infringement and copying are not present.

The district court also relied upon instances of what it characterized as Portec's improper litigation strategy which the court stated demonstrated Portec's lack of a good faith belief in its defenses. Absent willful infringement, however, there is no

basis in this case for enhanced damages. As indicated, bad faith behavior as a party to the litigation is a factor to be weighed in assessing the level of a defendant's culpability where an infringement is found willful. While dicta suggest that infringement damages may be enhanced *solely* by reason of misconduct during litigation,[10] such dictum is contrary to our precedent that "[i]f infringement [is] ... innocent, increased damages are not awardable for the infringement." *Kloster Speedsteel,* 793 F.2d at 1580, 230 USPQ at 91. Thus, applying *Kloster Speedsteel* to this case, we reverse the award of enhanced damages.

## E. *Attorney Fees*

With respect to making its award of attorney fees under 35 U.S.C. § 285, the district court again relied on the willfulness of Portec's infringement to find the case was exceptional. Thus, this award cannot stand. However, litigation misconduct may in itself make a case "exceptional." *Kloster Speedsteel,* 793 F.2d at 1580–81, 230 USPQ at 91; *Rohm & Haas Co. v. Crystal Chem. Co.,* 736 F.2d 688, 691–92, 222 USPQ 97, 99 (Fed.Cir.1984). The district court found misconduct first by reason of Portec's creation, during litigation, of what the district court termed as an "aberrant model" of its device in order to avoid infringement of the '836 design patent. Even had we not reversed the finding of infringement of the '836 patent, this basis for enhancement would be meritless. Although Portec already had an opinion of noninfringement from its counsel on the device in suit, Portec made further design changes in its device in order to make sure that it had a noninfringing device. Such a "litigation strategy" should be encouraged, not viewed as misconduct. *See State Indus.,* 751 F.2d at 1235–36, 224 USPQ at 424.

The second example concerned a screening device referred to at trial as the "Hoehn device." Portec introduced evidence of the Hoehn device, in an attempt to show that the claims of the '194 patent were invalid, including two spatially-consecutive photographs showing the Hoehn device. Read discovered that part of the first photograph had been covered by the second photograph so that it could not be seen that the device in the first photograph had no hitch. The missing hitch seriously undermined the testimony which had already been presented by Portec concerning the chronology of the development of the Hoehn device. Portec asked the district court to allow it to present surrebuttal evidence to explain the absence of the hitch, but the district court denied its request, explaining that Portec should have presented this evidence in its case in chief.

We cannot say that the district court abused its discretion in not allowing Portec to present additional evidence to explain away the missing hitch on the Hoehn exhibit in connection with the issue of validity. On the other hand, where the question is improper conduct to support an award of attorney fees, we conclude that the evidence must be considered by the court before finding misconduct and that the finding that this incident constituted improper litigation strategy cannot stand. Accordingly, we remand for a re-determination by the district court whether Portec did engage in litigation misconduct and, if so, whether it was sufficiently culpable as to make the case exceptional. We point out that, when attorney fees under 35 U.S.C. § 285 are awarded solely on the basis of litigation misconduct, the amount of the award must bear some relation to the extent of the misconduct. *See Beckman Instruments,* 892 F.2d at 1553–54, 13 USPQ2d at 1306–07.

## CONCLUSION

The judgment with respect to liability for infringement of the '194 patent is affirmed. The judgment with respect to liability for

---

10. *State Indus., Inc. v. Mor–Flo Indus., Inc.,* 948 F.2d 1573, 1577, 20 USPQ2d 1738, 1741 (Fed.Cir. 1991); *Beatrice Foods Co. v. New England Printing and Lithographing Co.,* 923 F.2d 1576, 1578–79, 17 USPQ2d 1553, 1555–56 (Fed.Cir.1991). We note, in this connection, that other sanctions are generally available for litigation misconduct. *See, e.g., Beckman Instruments, Inc. v. LKB Produkter AB,* 892 F.2d 1547, 1553–54, 13 USPQ2d 1301, 1306–07 (Fed.Cir.1989); 28 U.S.C. 1927.

infringement of the '836 patent and enhanced damages is reversed. The award of attorney fees is vacated and the case is remanded for modification of the injunction and for reconsideration of the award of attorney fees in light of this opinion.

## COSTS

Each party to bear its own costs.

AFFIRMED–IN–PART, REVERSED–IN–PART, VACATED–IN–PART, and REMANDED.

APPENDIX

Portec's original device

Portec's modified device