5 F.3d 1504
NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
 WANG LABORATORIES, INC., Plaintiff-Appellee,
v.
CLEARPOINT RESEARCH CORPORATION, Defendant-Appellant.
 No. 93-1081.
 United States Court of Appeals, Federal Circuit.
 July 23, 1993.
 
 Before ARCHER, MAYER and SCHALL, Circuit Judges.
 DECISION
 ARCHER, Circuit Judge.
 
 
 1
 Clearpoint Research Corporation (Clearpoint) appeals from an order of the United States District Court for the District of Massachusetts, Civil Action No. 92-11482-MA (Nov. 12, 1992), preliminarily enjoining Clearpoint from making and selling certain single in-line memory modules (SIMMs). We reverse the grant of the preliminary injunction.
 
 DISCUSSION
 I.
 
 2
 Wang Laboratories, Inc. (Wang) sued Clearpoint for infringement of United States Patent Nos. 4,656,605 (the '605 patent) and 4,727,513 (the '513 patent), both of which had been assigned to Wang. The patents relate to SIMMs, which are plug-in memory modules that may be installed on a printed circuit motherboard.[1]
 
 
 3
 The dynamic random access memory chips (DRAMs) of the claimed and accused SIMMs require a steady power supply voltage at their terminals. The parties agree that changes in voltage experienced by DRAMs may result from (1) changes in voltages supplied by the motherboard, (2) changes in voltages caused by the DRAM operation, (3) noise and interference from external sources, and (4) changes in voltages caused by the inductance of the underlying SIMM printed circuitboard wiring.
 
 
 4
 To compensate for these voltage changes and thereby ensure proper functioning of the SIMMs, Wang's claimed devices use "decoupling" capacitors mounted on the SIMM substrate. Wang's '605 patent, in its sole claim, claims "A memory module for installation on a printed circuit motherboard comprising: ... eight decoupling capacitors, mounted on said substrate and connected between the nine memory chips, for suppressing transient voltage spikes between said memory chips." Wang's '513 patent, in its only independent claim, claims "A memory module for installation on a printed circuit motherboard comprising: ... decoupling capacitors mounted on said substrate and coupled to the memory chips for suppressing transient voltages." The patents disclose using capacitors on the order of 100,000 to 220,000 picofarads each. Col. 2, lines 57-61 (the '605 patent); Col. 2, lines 49-53 (the '513 patent).
 
 
 5
 Wang alleges that Clearpoint's "3-pack"- and "lateral"-type SIMMs infringe the '513 and '605 patents under the doctrine of equivalents; Wang concedes there is no literal infringement. For purposes of the preliminary injunction, only the decoupling capacitors limitation of each patent was disputed as missing. Clearpoint's SIMMs have no capacitors mounted on the SIMM printed circuitboard. Clearpoint instead uses a multilayered SIMM substrate, which (1) has its own capacitance (otherwise known as a "parasitic capacitance") of 255 picofarads; and (2) has a relatively low inductance, thereby reducing the voltage changes experienced by the DRAMs.
 
 
 6
 The district court granted Wang's motion for a preliminary injunction, enjoining Clearpoint from making and selling its 3-pack and lateral modules. Clearpoint appeals.
 
 II.
 
 7
 A party seeking to preliminarily enjoin a party whom it accuses of patent infringement must show (1) that it has a likelihood of success on the merits at trial; (2) that it will suffer irreparable harm should preliminary relief not be granted; (3) that the hardships balance in its favor; and (4) that a preliminary injunction is in the public interest. New England Braiding Co. v. A.W. Chesterton Co., 970 F.2d 878, 882, 23 USPQ2d 1622, 1625 (Fed.Cir.1992). We review the district court's grant of a preliminary injunction for abuse of discretion, error of law, or a serious misjudging of the evidence. H.H. Robertson Co. v. United Steel Deck, Inc., 820 F.2d 384, 387, 2 USPQ2d 1926, 1927 (Fed.Cir.1987).
 
 
 8
 We are convinced that the district court clearly erred in ruling for Wang on the likelihood of success on the merits as to the question of infringement. As noted, Wang concedes that it must prove infringement under the doctrine of equivalents. "Under the doctrine of equivalents, a patentee must show that the accused device performs substantially the same function, in substantially the same way, to achieve substantially the same result." Read Corp. v. Portec, Inc., 970 F.2d 816, 822, 23 USPQ2d 1426, 1431 (Fed.Cir.1992). "[I]nfringement requires that each limitation of a claim be met exactly or by a substantial equivalent." Id.
 
 
 9
 The only dispute as to infringement for purposes of the preliminary injunction was whether the Clearpoint multilayer SIMM circuitboard is an equivalent of the claimed decoupling capacitors mounted on the substrate and coupled to the DRAM chips. The district court found, and it is not disputed, that both structures accomplish the same function--viz., suppression of transient voltage spikes between the memory chips. Clearpoint vigorously asserts, however, that the claimed and accused devices do not achieve that function in substantially the same way.
 
 
 10
 Wang admits that Clearpoint's devices, unlike Wang's claimed devices, use a "dramatic reduction in board inductance [to] dramatically reduce[ ] the amount of board capacitance needed to decouple." Br. for Appellee Wang at 29 (emphasis in original). Wang agreed that the parasitic capacitance and the capacitance of the motherboard were sufficient in Clearpoint's devices to achieve the necessary decoupling. Importantly, Wang's claimed device also has both a parasitic capacitance and a motherboard capacitance, but the inductance of Wang's SIMM circuitboard is so high that it requires, as claimed, decoupling capacitors mounted on the SIMM substrate. The evidence at this stage shows that Clearpoint, by greatly reducing the inductance of its SIMM circuitboard, has reduced "coupling" enough to eliminate entirely the "decoupling" structure claimed by Wang (i.e., capacitors mounted on the SIMM substrate). It therefore appears that Wang's claimed structure is not present in the accused devices at all, either literally or equivalently.
 
 
 11
 Wang's argument in essence is that Clearpoint and Wang accomplish the same thing--suppression of transient voltages. And the district court seemed to focus on this fact. While such a showing is necessary for infringement under the doctrine of equivalents, it is not in itself enough. The accused devices must be shown to function in substantially the same way as the claimed invention. Here, it is clear that the evidence in support of the preliminary injunction does not do that.
 
 
 12
 Because the evidence does not establish a likelihood of success on the merits, Wang is not entitled to a preliminary injunction. See Hybritech Inc. v. Abbott Labs., 849 F.2d 1446, 1451, 7 USPQ2d 1191, 1196 (Fed.Cir.1988).[2] Accordingly, we reverse the order of the district court granting Wang a preliminary injunction.
 
 
 
 [1]
 See Wang Laboratories, Inc. v. Toshiba Corp., 993 F.2d 858, 861-62, 26 USPQ2d 1767, 1770-71 (Fed.Cir.1993), for a thorough discussion of the relevant SIMM technology
 
 
 [2]
 Because Wang has failed in its threshold showing for a preliminary injunction, we do not reach the questions of irreparable harm, balance of hardships, and public interest. We also do not decide the prosecution history estoppel questions raised by the parties, nor do we decide what impact Wang v. Toshiba, supra note 1, has on this case