**VESTAR, INC., Plaintiff,**

v.

**LIPOSOME TECHNOLOGY, INC., Defendant.**

**Civ. A. No. 93–34–RRM.**

United States District Court, D. Delaware.

Jan. 25, 1994.

Richard L. Sutton, Edmond J. Johnson, Morris, Nichols, Arsht & Tunnell, Wilmington, DE, Conrad R. Solum, Jr., William E. Thomson, Jr., Carol A. Schneider, Lyon & Lyon, Los Angeles, CA, and Adam Cochran, Vestar, Inc., San Dimas, CA, for plaintiff.

R. Franklin Balotti, Robert W. Whetzel, Richards, Layton & Finger, Wilmington, DE, Lynn H. Pasahow, Beth H. Parker, Gil M. Soffer, McCutchen, Doyle, Brown & Enersen, San Francisco, CA, for defendant.

## MEMORANDUM OPINION

McKELVIE, District Judge

In this patent case, Vestar, Inc. seeks a declaratory judgment that United States Patent No. 5,180,713 is invalid, unenforceable and not infringed by Vestar. The declaratory defendant, Liposome Technology Inc., owns the '713 patent, which claims "a method of administering liposomes containing amphotericin B and having, after a storage period, a selected liposome size distribution in a size range of 0.5 microns or less...." U.S. Patent 5,180,713, Column 12, lines 58–61. In a counterclaim, Liposome Technology alleges that Vestar is infringing the '713 patent. Vestar has moved for summary judgment on the issue of noninfringement. This motion is fully briefed. The Court has reviewed the record, and heard oral argument on January 24, 1994.

Amphotericin B ("AmB") is a medicine which is useful in combatting certain fungus infections. AmB causes dangerous side effects, and is safer to administer when combined with liposomes. A liposome is a microscopic sphere and is composed of a lipid membrane which encloses an aqueous volume. Liposomes containing AmB are most

useful when they are smaller than 0.5 microns. The commercial value of many medicines, including liposomes containing AmB, are greatly increased if they can be stored for a period of several months before being used.

■ Liposome Technology patented a method for producing AmB liposomes having stable, selected sizing. This method is comprised of the following steps:

preparing a suspension of heterogeneously sized liposomes containing amphotericin B in the lipid phase and, in the aqueous phase, at least about 0.5% w/v of a membrane stabilizing agent.

reducing the size heterogeneity of the liposome suspension to achieve said selected liposome size distribution.

lyophilizing the liposome suspension **before the size distribution of the liposomes changes substantially.**

after such storage period, adding an aqueous medium to the lyophilized suspension, said adding being effective to produce a reconstituted suspension of liposomes in which the size distribution achieved by said reducing is substantially preserved. and

administering the reconstituted liposomes **before the size distribution of the liposomes changes substantially.**

U.S. Patent 5,180,713, Columns 12–14 (emphasis added).

Vestar manufactures a drug under the trade name of "AmBisome." AmBisome contains AmB liposomes which have been mixed with a membrane stabilizing agent, reduced to a selected size, and lyophilized (freeze-dried). After a period of storage, customers can reconstitute the drug by adding water, and then administer the drug to patients. Liposome Technology alleges that the manufacturing of AmBisome infringes the '713 patent literally, and under the doctrine of equivalents.

Vestar denies infringement. It argues that the language of the '713 patent highlighted above, read in context with the specifications and the file wrapper, limits the claim of the '713 patent to AmB liposomes that will fuse (grow) if not lyophilized. AmBisome is usually lyophilized. However, Vestar alleges that the liposomes in AmBisome would not grow even if left in suspension for months without being lyophilized.

The Court finds that the language "before the size distribution of the liposomes changes substantially" is ambiguous. On its face, it could mean, as Liposome Technology urges, that the liposomes should be lyophilized at any point before they begin to grow, even if the liposomes in question could remain in suspension indefinitely without growing. However, in an instance where the liposomes would stay stable indefinitely, there would be no meaning to the further restriction that the liposomes be lyophilized before the size distribution changes substantially. The presence of this restriction fairly implies that the claim is addressing a solution of liposomes whose size distribution is unstable.

Since the claim is not unambiguous on its face, the Court will look to the specification and file wrapper to illuminate its meaning. *See Read Corp. v. Portec, Inc.,* 970 F.2d 816, 823 (Fed.Cir.1992) ("One must look to the language of the claim, and the patent's specification and prosecution history to properly interpret the scope of a patent claim"). When one examines these materials, it becomes clear that the applicants for the '713 patent were not addressing a method for administering AmB liposomes which were stable in suspension. Indeed, the applicants represented to the Patent Office that they had discovered that AmB could not be stabilized without lyophilization. "The method is based on the discovery that AMB/liposomes, which are size unstable in suspension in the presence of a membrane protective agent, are nonetheless protected against size changes on lyophilization and rehydration by the presence of the agent." D.I. 88 at A68. The applicants argued that their invention could be patented over the prior art in part because of that discovery.

"It is well established that an invention viewed as a whole would not have been obvious where the prior art didn't recognize the existence of the problem solved by the invention. [citation omitted] In the present case, the prior art taken as a whole does not show or suggest the prob-

lem associated with AMB liposomes, after liposome sizing down to a desired size distribution between 0.2–0.5 microns, of rapid regrowth when stored in suspension form."

*Id.* at A101–102; *see also, e.g., Id.* at A63–A65, A98–A99, A106–A108.

Given this context, Vestar's interpretation of the claim is correct: the claim of the '713 patent does not apply to liposomes whose size distribution will not change substantially in suspension. In other words, the liposomes discussed in the patent are liposomes which would grow substantially if left in suspension without lyophilizing.

Although the Court agrees with Vestar's interpretation of the claim, it will not grant summary judgment. There are facts in dispute relating to whether AmBisome actually is size stable in suspension. Liposome Technology may attempt to prove at trial that AmBisome infringes the claims of the '713 patent as construed by the Court.