**POWER INTEGRATIONS,
INC., Plaintiff,**

v.

**FAIRCHILD SEMICONDUCTOR
INTERNATIONAL, INC., et
al., Defendants.**

**C.A. No. 04–1371–LPS.**

United States District Court,
D. Delaware.

Jan. 19, 2011.

William J. Marsden, Jr., Kyle Wagner Compton, Fish & Richardson, P.C., Wilmington, DE; Frank E, Scherkenbach, Fish & Richardson, P.C., Boston, MA; Howard G. Pollack, Michael R. Headley, Fish & Richardson, P.C., Redwood City, CA, for Plaintiff.

Andrew C. Mayo, John G. Day, Lauren E. Maguire, Tiffany Geyer Lydon, Ashby & Geddes, Wilmington, DE; Bas de Blank, George Hopkins Guy, III, Ulysses Hui, Vicki L. Feeman, Brian H. VanderZanden, Orrick, Herrington & Sutcliffe LLP, Menlo Park, CA; Terrence P. McMahon, McDermott, Will & Emery, LLP, Menlo Park, CA; Blair M. Jacobs, Christine A. Ondrick, McDermott, Will & Emery, LLP, Washington, DC; Eric W. Hagen, McDermott, Will & Emery, LLP, Los Angeles, CA; Leigh J. Martinson, McDermott, Will & Emery, LLP, Boston, MA; Brett E. Bachtell, McDermott, Will & Emery, LLP, Chicago, IL, for Defendants.

## OPINION

STARK, District Judge.

Pending before the Court are two post-trial motions: (1) Fairchild's motion to amend the findings of fact pursuant to Federal Rule of Civil Procedure 52 (D.I. 766); and (2) Power's motion to declare that this case is exceptional and award Power attorneys' fees and treble damages (D.I. 752). For the reasons that follow, the Court will deny Fairchild's motion and grant in part and deny in part Power's motion.

### I. Factual Background and Procedural Posture

For purposes of these motions, the Court will not engage in a lengthy recital of the facts of the case. These parties have been litigating these patents in this Court for more than six years, and their disputes have generated numerous prior opinions. (See, e.g., D.I. 231, D.I. 683)[1] For present purposes, a brief overview will suffice.

In October 2004, Power Integrations ("Power") filed suit against Fairchild Semiconductor, International, Inc., and Fairchild Semiconductor Corporation (collectively, "Fairchild"), alleging that Fairchild infringed certain of Power's patents, specifically the '876, '851, '366, and '075 patents. (D.I. 35) After discovery was complete and the Court issued its claim construction opinion, the case proceeded to trial in four phases: (i) a jury trial was held on the issues of infringement and willfulness (D.I. 415); (ii) a second jury issued a verdict on invalidity (D.I. 555); (iii) Fairchild's inequitable conduct defense was tried to the bench (D.I. 683); and finally (iv) the Court held a second bench trial on the issue of willfulness, in light of the intervening Federal Circuit decision in In re Seagate Technology, LLC, 497 F.3d 1360 (Fed.Cir.2007). (D.I. 750) Each phase of the litigation has gone against Fairchild. The Court's most recent opinion on willfulness upheld the jury's previous finding that Fairchild willfully infringed Power's patents. (D.I. 750) (hereinafter, "Willfulness Opinion")

Fairchild filed several post-trial motions following the jury trials, including motions for judgment as a matter of law and a new trial. The Court denied each of these motions. (D.I. 688, D.I. 690)

---

1. The parties are also involved in a related matter pending in this District. See Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc., Civ. No. 08–309–LPS, 763 F.Supp.2d 671, 2010 WL 5514363, 2010 U.S. Dist. LEXIS 73158 (D.Del. Oct. 5, 2010).

After the first jury trial ended with an infringement verdict, Fairchild initiated ex parte reexamination proceedings in the United States Patent and Trademark Office ("PTO"), seeking review of Power's patents in light of certain prior art references. (D.I. 778 at 2) The PTO agreed that there were "substantial new questions" of patentability and granted reexamination for certain of the claims. (D.I. 767 at ¶ 244)

Fairchild has contended that the PTO reexamination proceedings should have a substantial impact on this Court's analysis of the patents at issue. For example, Fairchild moved successfully to have the Court issue a stay of its injunction pending the outcome of the PTO proceedings.[2] (D.I. 703) Additionally, the PTO reexamination proceedings were allowed in evidence at the bench trial on willfulness.

Fairchild now asks the Court to amend the findings of fact contained in the Willfulness Opinion to include facts about the PTO reexamination proceedings and the purported "closeness" of the case. At the same time, Power asks the Court to enhance its damages award and to award attorneys' fees.

The parties have fully briefed the motions, and the Court heard argument on October 26, 2010. (D.I. 788) (hereinafter "Tr.")

## II. *Fairchild's Motion to Amend the Court's Findings of Fact*

■ This matter was previously assigned to the Honorable Joseph J. Farnan, Jr., who subsequently retired from the bench. While this matter was pending before Judge Farnan, the Federal Circuit decided *Seagate*, 497 F.3d at 1360, which changed the law governing willfulness. *Seagate* requires that the patentee prove willful infringement by clear and convincing evidence that the accused infringer acted "despite an objectively high likelihood that its actions constituted infringement of a valid patent." *Id.* at 1371.

Based on *Seagate*, Judge Farnan ordered a new trial solely on the issue of willfulness. (D.I. 693) The post-Seagate trial on willfulness was conducted to the bench. Thereafter, consistent with Fed. R.Civ.P. 52(a), Judge Farnan issued the Willfulness Opinion, which contained findings of fact and conclusions of law. (D.I. 750) In his Willfulness Opinion, Judge Farnan concluded that Fairchild willfully infringed the '075, '876, '851, and '366 patents. (*Id.* at 7–8) By its Motion to Amend, Fairchild seeks to have the Court revise the Willfulness Opinion to include findings of fact about the PTO reexamination proceedings and the purported "closeness" of the case.

Fairchild places great weight on an earlier order of Judge Farnan's, in which he granted Fairchild's request for a new trial on willfulness. (D.I. 766 at 2) There, in Fairchild's view, Judge Farnan stated that the new trial "must" take into account evidence regarding the PTO's reexaminations. (D.I. 692 at 10) Judge Farnan's use of the word "must" indicates to Fairchild not only that the Court must evaluate evidence relating to the reexamination proceedings, but also that the Court must include evidence about the PTO reexamination proceedings in its findings of fact. At the new trial, the Court heard evidence regarding the PTO's reexaminations of Power's patents. (D.I. 740) The problem, in Fairchild's view, is that the Willfulness Opinion does not specifically find facts relating to the PTO reexamination.

---

**2.** Later, the Court lifted its stay and reinstated its permanent injunction-after the Federal Circuit had denied Fairchild's interlocutory appeal on jurisdictional grounds. (D.I. 704; D.I. 722)

Fairchild also faults the Wilfulness Opinion for failing to make factual findings relating to the purported closeness of the case. Fairchild contends that cases involving close questions—including cases presenting "plausible or credible defenses"—preclude a finding of willfulness as a matter of law, since willfulness must be based on "objective recklessness." (D.I. 766 at 5) (citing *Black & Decker, Inc. v. Robert Bosch Tool Corp.*, 260 Fed.Appx. 284, 291 (Fed.Cir.2008); *Cohesive Techs. v. Waters Corp.*, 543 F.3d 1351, 1374 n. 4 (Fed.Cir. 2008)) Here, Fairchild believes the Court as well as Power have acknowledged that the issues presented are "close." The closeness of the case is further demonstrated, in Fairchild's view, by the fact that four of the five claims involved in the reexamination proceedings have either been amended or cancelled. Yet, because Judge Farnan did not make any findings of fact related to the reexamination in his Willfulness Opinion, that opinion does not, in Fairchild's estimation, accurately reflect the closeness of the case. Fairchild asks that the Court amend the Willfulness Opinion to add the "fact" that Fairchild had plausible or credible defenses, so that the record on appeal will be full and complete.

Power responds that Fairchild is distorting the reexamination proceedings and rehashing stale arguments the Court has already heard and rejected. For example, Power argues that Fairchild fails to mention that three claims Fairchild willfully infringed were either never subject to reexamination or were found valid by the PTO at an early stage of the reexamination proceedings. (D.I. 778 at 7–8)

According to Power, the Court did consider the reexamination proceedings and the viability of Fairchild's defenses indeed, this was "the heart" of the bench trial on willfulness—and the Court nevertheless determined that Fairchild willfully infringed Power's patents. (D.I. 778 at 1) To Power, the Wilfulness Opinion makes clear that Judge Farnan considered Fairchild's proposed findings and found them insufficient. Power had previously moved to exclude consideration of the reexamination proceedings altogether during the willfulness trial. Denying Power's motion, the Court allowed the reexamination evidence to come in, although it noted that this evidence was entitled to little weight, since the reexamination proceedings were only initiated after the first jury verdict, and, therefore, were part of Fairchild's post-litigation strategy. (D.I. 728 at 2–3) Thus, in Power's view, Judge Farnan clearly did take the reexaminations into account in his "totality of the circumstances" analysis, but he ultimately—and properly—decided they were entitled to little weight. (D.I. 750 at 3, 10–11) Thus, Power contends that the Willfulness Opinion does set forth findings related to Fairchild's defenses; it simply finds these defenses were not credible.

Power also argues that Fairchild provides no new evidence that would justify revisiting the Willfulness Opinion. In fact, the most recent PTO proceedings went in Power's favor: claim 1 of the '851 patent issued as claim 19, with minor additional language incorporating the Court's construction of the disputed claim terms. (D.I. 778 at 11)[3] Similarly, the PTO confirmed the validity of claim 4 of the '851 patent at an early stage of the reexamination. (*Id.*)

Finally, Power argues that Fairchild mischaracterizes its and Judge Farnan's

---

3. More recently still, on December 30, 2010 Fairchild advised the Court that the Board of Patent Appeals has denied Power's appeal of the PTO's rejection of claims 1 and 17–19 of the '876 patent, finding these claims were anticipated. (D.I. 789; *see also* D.I. 790) This latest ruling does not alter the conclusions reached by the Court on the pending motions.

statements about the closeness of issues relating to the '075 and the '876 patents, including claim construction issues. Power accuses Fairchild of engaging in "soundbite" advocacy, cherry-picking quotes from various points of this lengthy litigation to suggest, misleadingly, that Power and Judge Farnan agreed that this case was close. (D.I. 778 at 13)

 The Court is persuaded that Judge Farnan considered the facts relevant to Fairchild's defenses and the PTO reexaminations and properly weighed them in light of *Seagate*. In reaching this conclusion, it is important to emphasize the procedural posture in which Fairchild's motion arises. Fairchild moves under Rule 52(b), seeking to amend the Court's findings of fact. The purpose of a Rule 52(b) motion is to "correct manifest errors of law or fact or, in some limited situations, to present newly discovered evidence." *Fontenot v. Mesa Petroleum Co.*, 791 F.2d 1207, 1219 (5th Cir.1986); *see also Edwards v. Wyatt*, 2007 WL 136687, at *1 (E.D.Pa. Jan. 8, 2007) ("[T]he movant must show that the motion is necessary to correct manifest errors of law or fact."), *vacated in part on other grounds by Edwards v. Wyatt*, 330 Fed.Appx. 342 (3rd Cir.2009). Furthermore, Rule 52(b) motions to amend should only be allowed when the issues are "basic or essential" to the litigation. *See U.S. v. Crescent Amusement Co.*, 323 U.S. 173, 180, 65 S.Ct. 254, 89 L.Ed. 160 (1944). Absent new evidence, a Court should limit its inquiries to those in which "manifest injustice" would result.[4] *See* 9A Charles Wright & Arthur Miller, *Federal Practice & Procedure* § 2582 (2006) (discussing case law and standards for review of 52(b) motions to amend).

 As Fairchild conceded at oral argument, the Court is not required to take each and every proposed finding of fact from a party and expressly adopt or reject each of them. (Tr. at 11) *See also Falcon Equipment Corp. v. Courtesy Lincoln Mercury, Inc.*, 536 F.2d 806, 808 (8th Cir. 1976) ("It is well established that the trial court does not need to make specific findings on all facts but only must formulate findings on the ultimate facts necessary to reach a decision."); *see also generally Kelley v. Everglades Drainage Dist.*, 319 U.S. 415, 422, 63 S.Ct. 1141, 87 L.Ed. 1485 (1943) ("Nor do we intimate that findings must be made on all of the enumerated matters or need be made on no others; the nature of the evidentiary findings sufficient and appropriate to support the court's decision as to fairness or unfairness is for the trial court to determine in the first instance in the light of the circumstances of the particular case. We hold only that there must be findings, stated either in the court's opinion or separately, which are sufficient to indicate the factual basis for the ultimate conclusion").

 Indeed, when a party has already presented the evidence in question, as Fairchild did here, the Court should not allow Rule 52(b) to function as a means of circumventing ordinary trial practice and obtaining a "second bite at the apple."

---

4. Several courts have noted that the standard for a 52(b) motion is identical to the standard for a 59(e) motion to alter a judgment. *See, e.g., FINOVA Capital Corp. v. Richard A. Arledge, Inc.*, 2007 WL 1965335, at *2 (D.Ariz. July 2, 2007) ("The standard for altering or amending a judgment under Rule 59(e) is nearly identical to the standard for granting similar relief under Rule 52"). To that end, the Third Circuit's opinion in *North River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (1995), is highly instructive: "A proper motion to alter or amend judgment must rely on one of three major grounds: (1) an intervening change in controlling law; (2) the availability of new evidence not available previously; or (3) the need to correct [a] clear error of law or prevent manifest injustice" (internal citations omitted).

*See, e.g., Haberern v. Kaupp Ltd. Defined Ben. Plan and Trust Agreement,* 151 F.R.D. 49, 51 (E.D.Pa.1993) ("A Rule 52(b) motion should not be employed to introduce evidence that was available at trial but was not proffered, to relitigate old issues, to advance new theories, or to secure a rehearing on the merits"). Clearly, for the type of relief sought by Fairchild, the burden is high, and the relief should be available only in narrow circumstances.[5]

■ The Court is persuaded that Fairchild has not met its burden. There is no indication in the record that Judge Farnan viewed the willfulness issue as presenting a close case. Certainly, the Willfulness Opinion betrays no hint of such a view. After expressly stating that he would "take into account whether the accused infringer maintained plausible or credible defenses to infringement and invalidity," Judge Farnan then explained in detail the evidence upon which his opinion relied, including specific testimony and counsel argument the Court found to be not credible. (*See* D.I. 750 at 3, 6–7 ("[T]he evidence does not support Mr. Jeon's testimony.... As for the post-litigation opinions obtained by Fairchild with regard to the '075 patent, the Court concludes that these opinions are insufficient ...")) In fact, Judge Farnan's Willfulness Opinion specifically rejects Fairchild's "closeness" theory, holding that its adoption would effectively eliminate the possibility of a finding of willful infringement in any "hard fought and hotly contested patent litigation." (*Id.* at 13) There is no basis to conclude that

the Willfulness Opinion fails adequately to reflect Judge Farnan's findings and conclusions. Nor does the Court presently see any basis to alter or amend Judge Farnan's considered decisions.

■ Fairchild's arguments about the PTO reexamination proceedings are also unavailing. The PTO is a different forum than a district court, and it employs different standards of proof for different purposes than a court does in civil litigation. Evidence relating to reexaminations is not necessarily "essential" or "basic" to the willfulness issue. *See generally Crescent Amusement,* 323 U.S. at 173, 65 S.Ct. 254.

Fairchild relies on *H. Prang Trucking Co. v. Local Union No. 469,* 613 F.2d 1235, 1238 (3d Cir.1980), for the proposition that, "if the findings [the district court] has made are not sufficient for a clear understanding of the basis of the decision," an appellate court "may vacate the judgment and remand the case for findings." Here, however, even assuming, *arguendo,* that Judge Farnan failed to make certain factual findings, the Willfulness Opinion nevertheless is "sufficient" to provide a clear understanding of the factual basis for Judge Farnan's conclusions of law. *See also Haberern,* 151 F.R.D. at 51 ("The primary purpose of Rule 52(b) is to ensure that the trial court's findings of fact and legal reasoning are clear, cover the essential factual and legal points, and will be understood by the appellate court, not to allow a party a second opportunity to prove its case"). Rule 52(b) requires no more.[6]

---

5. The Court understands that Fairchild is not seeking by its motion to alter the Court's judgment that Fairchild is a willful infringer. (Tr. at 13) Fairchild has no expectation that this Court will find Fairchild *not* to have willfully infringed Power's patents. Instead, Fairchild seeks only to supplement the Court's findings of fact, even though the addition of those findings—everyone agrees— would not alter the substantive outcome.

While the relief sought by Fairchild, then, may be more limited than that sought by parties in some of the cases on which Power relies for gleaning the applicable legal standards, the Court concludes that even this more limited relief is available only in the narrow circumstances described in the standards cited above.

6. Fairchild has cited no authority for its broad proposition that a district court is re-

Furthermore, Judge Farnan indisputably *heard* all of the reexamination evidence Fairchild believed to be relevant. The bench trial on willfulness focused almost entirely on the reexamination proceedings. (D.I. 740) On this record, Judge Farnan concluded that the timing of Fairchild's behavior was crucial, and he relied most heavily on Fairchild's pre-litigation conduct. (D.I. 750 at 13) ("The Court concludes that this evidence [pre-litigation conduct] weighs more heavily than the post-suit strategy developed by counsel to avoid a claim of willful infringement, after such infringement has already occurred.") Fairchild did not initiate the reexamination proceedings until after a jury had returned a verdict finding that Fairchild infringed Power's patents. It is plain that Judge Farnan deemed this post-suit conduct of Fairchild to be of limited relevance to the willfulness determination.

While Judge Farnan did not specifically address the PTO proceedings in the Willfulness Opinion, no authority has been cited requiring that the Court do so. To the extent Fairchild's motivation is to ensure that the Federal Circuit will have before it the evidence relating to the reexaminations, that evidence is already in the record as a result of the second willfulness trial. Fairchild's proposed findings of fact are also in the record. The Court does not see any need to add to the record by making additional findings of fact.

Fairchild's motion will be DENIED.

### III. *Motion for Declaration that Case is Exceptional, for Treble Damages, and for Attorneys' Fees*

■■■■■ The Court derives its power to award enhanced damages and, in exceptional cases, attorneys' fees, from statute. *See* 35 U.S.C. § 284 ("[T]he court may

quired to make findings of fact if such findings would be "helpful" to an appellate court.

increase the damages up to three times the amount found or assessed."); 35 U.S.C. § 285 ("The court in exceptional cases may award reasonable attorney fees to the prevailing party."). Because the statute provides no guide or standard for awarding enhanced damages or attorneys' fees, exercise of this power rests in the sound discretion of the trial court. *See Seagate*, 497 F.3d at 1368 ("Although a trial court's discretion in awarding enhanced damages has a long lineage in patent law, ... the current statute, similar to its predecessors, is devoid of any standard for awarding them.... Absent a statutory guide, we have held that an award of enhanced damages requires a showing of willful infringement."); *State Industries, Inc. v. Mor–Flo Industries, Inc.*, 948 F.2d 1573, 1576 (Fed. Cir.1991). The touchstone for considering whether to enhance damages is the infringer's level of culpability—that is, the Court should assess how egregious is the infringer's conduct. *See Jurgens v. CBK, Ltd.*, 80 F.3d 1566 (Fed.Cir.1996). Additionally, the Court is guided by the underlying rationale embodied in enhanced damages, including deterrence and punishment of the infringer, as well as "protection of the integrity of the patent system." *Lightwave Technologies, Inc. v. Corning Glass Works*, 1991 WL 4737, 1991 U.S. Dist. LEXIS 543 (S.D.N.Y. Jan. 16, 1991); *see also Beatrice Foods Co. v. New England Printing and Lithographing Co.*, 923 F.2d 1576, 1579 (Fed.Cir.1991) (noting that enhanced damages are punitive); *Avia Group Int'l v. L.A. Gear California*, 853 F.2d 1557, 1566 (Fed.Cir.1988).

■■■■■ Attorneys' fees, unlike enhanced damages, are only awarded in "exceptional cases." *Compare* 35 U.S.C. § 285 *with* 35 U.S.C. § 284. As with en-

(Tr. at 11–12)

hanced damages awards, shifting attorneys' fees is discretionary, *See Stevenson v. Sears, Roebuck & Co.*, 713 F.2d 705, 712–13 (Fed.Cir.1983). In determining whether a case is exceptional and, therefore, attorneys' fees may be justifiable, courts undertake an analysis similar to the one described above. While a finding of willfulness is sufficient in and of itself to justify an enhanced damages award, several courts have noted that a finding that the case is "exceptional" for attorneys' fees requires a still higher showing of egregiousness. *See, e.g., TWM Mfg. Co. v. Dura Corp.*, 213 U.S.P.Q. 423, 428 (E.D.Mich.1981) ("[The] standard for enhanced damages up to treble damages is not as stringent a standard as the standard which is set forth for the granting of the actual attorney fees"), *vacated on other grounds by TWM Mfg. Co., Inc. v. Dura Corp.*, 722 F.2d 1261 (6th Cir.1983); *see also Universal Athletic Sales Co. v. Am. Gym*, 480 F.Supp. 408, 414–15 (W.D.Pa. 1979) ("It is true that questions involving an award of counsel fees are not necessarily identical with those involving treble damages"). Courts have identified certain categories of cases that are "exceptional:" "Exceptional cases include: inequitable conduct before the PTO; litigation misconduct; vexatious, unjustified, and otherwise bad faith litigation; a frivolous suit or willful infringement." *Telcordia Techs., Inc. v. Cisco Sys.*, 592 F.Supp.2d 727, 751 (D.Del.2009) (internal quotation marks omitted).

### A. *Enhanced Damages under § 284*

While a finding of willfulness does not automatically entitle a patentee to enhanced damages, where there is such a finding the Court must have a rationale for choosing *not* to award enhanced damages. *See Jurgens*, 80 F.3d at 1572 ("Upon a finding of willful infringement, a trial court should provide reasons for not increasing a damages award or for not finding a case

exceptional for the purpose of awarding attorneys fees."). Obtaining enhanced damages does require, however, "clear and convincing evidence" to support such an award. *See Shatterproof Glass Corp. v. Libbey–Owens Ford Co.*, 758 F.2d 613, 628 (Fed.Cir.1985) ("The jurisprudence, however, uniformly requires clear and convincing evidence in support of increased damages.").

A § 284 inquiry proceeds in two steps. First, a determination is made as to whether the infringer acted with culpability. A finding of willful infringement satisfies this culpability requirement. Second, the Court must determine whether, given the totality of the circumstances, damages should be enhanced. *See Tristrata Tech., Inc. v. ICN Pharmaceuticals, Inc.*, 314 F.Supp.2d 356 (D.Del.2004).

Here, Fairchild has already been adjudged to willfully infringe (D.I. 750), so the first step is satisfied. Turning to the second step, the *"Read* factors" are useful as a guide to evaluate the egregiousness of an infringer's conduct. *See Read v. Portec*, 970 F.2d 816, 827 (Fed.Cir.1992). The factors to consider are: whether the infringer deliberately copied the ideas or design of another; whether the infringer investigated the scope of the patent and had a good-faith belief that it was not infringing or that the patent was invalid; the infringer's behavior during litigation; the infringer's size and financial condition; any remedial actions taken; the closeness of the case; the duration of the infringing conduct; and any concealment on the part of the infringer. *See id.* No one factor is dispositive. Instead, "[t]he paramount determination in deciding to grant enhancement and the amount thereof is the egregiousness of the defendant's conduct based on all the facts and circumstances." *Id.* at 826; *see also i4i Ltd. Partnership v. Microsoft Corp.*, 598 F.3d 831, 859 (Fed.Cir.

2010) ("[T]he standard for deciding whether—and by how much—to enhance damages is set forth in *Read,* not *Seagate.*"), *cert. granted by* —— U.S. ——, 131 S.Ct. 647, 178 L.Ed.2d 476 (2010).

The Court next turns to application of the *Read* factors here.

### 1. *Deliberate Copying and Investigation of Scope of Patent*

The first two factors—whether the infringer deliberately copied the designs and ideas of another and whether the infringer investigated the scope of the patent to avoid infringement—have effectively already been determined by this Court's decision in its Willfulness Opinion. (D.I. 750) There, the Court found that:

the evidence demonstrates that Fairchild either (1) engaged in a meticulous study of products made with the patented features through detailed reverse engineering efforts and then blatantly copied the products without any regard to the high likelihood of infringement that would arise from such blatant copying, or (2) in the case of other patents, completely disregarded the substance of at least some of the patents-in-suit, making little or no effort to ensure that their products did not infringe.

(*Id.* at 4) While Fairchild argued that its efforts were appropriately confined to designing around Power's patents, the Court did not accept this theory. With respect to the '075 patent, the Court specifically refused to credit Fairchild's expert, Mr. Jeon, and the Court further noted that Fairchild, despite its knowledge that there was a high likelihood that its products might infringe Power's patents, chose not to obtain an opinion of counsel letter until after litigation had already commenced. (*Id.* at 9–10)

The Court was even more emphatic with respect to the other patents:

Without any prelitigation, internal documented reason to doubt the validity of much of this patented technology and without seeking the prelitigation opinion of counsel for any of the asserted patents, except the '876 patent, ... Fairchild proceeded again with its industrial stalking measures ... not to avoid infringement and design around ... which would have been legitimate competitive behavior, but rather to copy them in violation of Power Integrations' patent rights.

(*Id.* at 8–11) The Court explicitly found this evidence to be "clear and convincing." (*Id.* at 3)

Later, the Court reiterated its finding:

In this case, the evidence establishes that Fairchild engaged in the blatant copying of Power Integration's patented features, knowing of the features, and their importance to the industry without adequate investigation into non-infringement and validity of the patents prior to the initiation of this action.

Fairchild contends that Power focuses too much on the copying or "industrial stalking" factor in the *Read* analysis. Regardless of how Power has constructed its analysis, the Court has been careful to evaluate all of the *Read* factors and reach a conclusion based on the totality of the circumstances. Plainly, the first two *Read* factors weigh heavily in favor of awarding enhanced damages.

### 2. *Conduct during Litigation*

The next *Read* factor does not tilt the balance in either party's favor. As the Court's Willfulness Opinion noted, this has been a hotly-contested, hard-fought legal battle. Both sides have argued that their opponents' litigation tactics have been vexatious. But the record does not reveal flagrant behavior. There were no sanctions awarded; indeed, at no point did Power even request that the Court sanc-

tion Fairchild.[7] Again, the Court finds that the litigation tactics weigh neither for nor against awarding enhanced damages.

### 3. *Defendant's Financial Condition*

The defendant's financial condition typically is used as a reason *not* to grant enhanced damages to the fullest extent. *See, e.g., Lightwave Technologies, Inc. v. Corning Glass Works*, 1991 WL 4737, at *13, 1991 U.S. Dist. LEXIS 543, at *37 (S.D.N.Y. Jan. 16, 1991) (holding that defendant "can withstand some increase in damages, but not treble damages"); *Bott v. Four Star Corp.*, 1985 WL 6071, at *19, 1985 U.S. Dist. LEXIS 12747, at *51–52 (E.D.Mich. Dec. 16, 1985) ("[A] threefold increase in damages would severely affect [defendant's] financial condition."), *vacated and remanded for clarification of damage amount*, 807 F.2d 1567 (Fed.Cir.1986); Donald S. Chisum, Chisum on Patents § 20.03[4][b][vi] (1990) (stating that amount of increase in damages awarded should be a function of size and wealth of infringer). In other words, courts look at the financial condition of a defendant to assess the degree to which trebling damages would severely impair the defendant's ability to function.

Fairchild argues that its profits from the sale of the accused products are not much more the $6 million damages already awarded in this case. Hence, an enhanced damages award would "severely prejudice" Fairchild's non-infringing business. It would also, in Fairchild's view, permit Power to "recapture" the "worldwide" damages it previously sought but was denied by the Court. (D.I. 762 at 16–17)

As Fairchild acknowledges, however, enhanced damages are intended to be punitive. (Tr. at 6; *see also SRI Int'l, Inc. v. Advanced Tech. Labs., Inc.*, 127 F.3d 1462, 1468 (Fed.Cir.1997) ("[T]he remedy of enhancement of damages not only serves its primary punitive/deterrent role, but in so doing it has the secondary benefit of quantifying the equities as between patentee and infringer."); *NTP Inc. v. Research in Motion, Ltd.*, 270 F.Supp.2d 751, 754 (E.D.Va.2003) ("Enhanced damages not only operate as a punitive measure against individual infringing defendants, but they also serve an overarching purpose as a deterrence of patent infringement.")) For this reason, Fairchild's contention that the $6 million of damages already awarded—assuming that this amount represents Fairchild's entire profit it earned from infringing sales—does not help it avoid an enhanced damages award. While the $6 million may compensate Power, it does not adequately punish Fairchild.

There is no evidence that Fairchild's operations or business would be severely jeopardized by an award of enhanced damages. Indeed, the record demonstrates that Fairchild operates on a global scale, having annual revenues in excess of $1 billion. (D.I. 753 at 15) At oral argument, Fairchild conceded that even a trebling of the damages award here would "not be a death sentence" for Fairchild. (Tr. at 48) Consequently, this factor weighs in favor of enhancing damages.

### 4. *Closeness of the Case*

In addressing Fairchild's Motion to Amend above, the Court has already discussed Fairchild's "closeness" of the case theory. The closeness of the case is related to the objective prong of the *Seagate* test and turns on the degree of willfulness—in other words, whether the accused infringer maintained plausible or credible

---

**7.** In pointing out this omission, the Court does not mean to invite the filing of frivolous sanctions requests.

defenses to infringement. (D.I. 762 at 7–9)

■■■ Normally, obtaining advice of counsel before litigation commences is one meaningful way to demonstrate a good faith attempt to avoid infringement. Here, however, far from exonerating Fairchild, the evidence demonstrates that all but one of the opinion letters obtained by Fairchild were obtained only *after* the initiation of litigation; moreover, the opinion letters were contradictory and inconsistent, and Fairchild's reliance on the lone pre-litigation opinion letter for the '876 patent was "lukewarm at best." (D.I. 750 at 7–10) ("While *Seagate* does not impose an affirmative duty to obtain the opinion of counsel, the Court considers the absence of such objective opinions in this case to weigh heavily in favor of demonstrating an objectively high likelihood of infringement")

Fairchild's references to the Court's and Power's comments suggesting that this case was close are marginally true, but ultimately unpersuasive. Fairchild cites four such statements. For example, while the Court's opinion on inequitable conduct contains language suggesting that the Court found the inventor of Power's '075 patent, Dr. Eklund, to have engaged in "troubling" behavior, the Court also found his explanation of his behavior to be plausible. (D.I. 683)

At oral argument, Fairchild relied heavily on the *Telcordia* case. *See* 592 F.Supp.2d 727. In Fairchild's view, *Telcordia* supports its contention that even when there is deliberate copying, if a willful infringer puts forth a "strong, good faith defense" at trial, an award of enhanced damages is inappropriate. *Id.* at 750. In *Telcordia*, however, the court made a specific finding that "[t]he issues of infringement and invalidity were extremely close." *Id.* at 751. Here, there has been no similar finding. In fact, to the contrary, Judge Farnan stated in the Willfulness Opinion: "In the Court's view, however, the evidence of copying is so strong in this case and the evidence related to counsel's opinion letters and measures taken by Fairchild to avoid infringement so weak, that it is hard to understand how one could objectively believe such actions would not constitute a high likelihood of infringement." (D.I. 750 at 13)

Hence, this factor favors an award of enhanced damages.

### 5. *Duration of Misconduct and Remedial Measures*

Fairchild makes much of the "time, effort, and expense" it underwent to obtain opinion of counsel letters once it received notice of Power's suit. (D.I. 762 at 10) According to Fairchild, it also successfully designed around the products and voluntarily stopped making or selling the accused products in the U.S. Power, however, argues that these remedial actions were "too little, too late." Power also disputes that Fairchild's efforts at designing around Power's patents were successful. (D.I. 777 at 3)

■■■ In terms of assessing the egregiousness of Fairchild's conduct in conducting an enhanced damages award, the Court sees no reason to focus only on pre-litigation conduct. For remedial measures—which, by definition, can only be taken after a party knows of the need to remedy its actions—conduct during and after litigation can also be taken into account. *See, e.g., Intra Corp. v. Hamar Laser Instruments, Inc.*, 662 F.Supp. 1420, 1439 (E.D.Mich.1987) (doubling, rather than trebling, damages because infringer ceased sales of accused products *during* litigation).

Fairchild makes an interesting suggestion to the Court involving timing—name-

ly, that the Court should exercise its discretion differently with respect to different portions of the case. In particular, Fairchild seeks to cabin all of its culpable conduct in the pre-litigation time frame, and asserts that it acted entirely in good faith at every point following initiation of the suit. In this regard, Fairchild does not strenuously oppose application of a damages multiplier for the pre-litigation time frame—although it quickly adds that the adjudged damages for this portion of the case are zero, given the Court's finding that Power failed to properly mark its products with the patent number. (Tr. at 74)

There is authority to support the Court's power to craft an enhanced damages award in the manner Fairchild proposes. See Stryker Corp. v. Davol Inc., 234 F.3d 1252 (Fed.Cir.2000); Bott v. Four Star Corp., 1985 WL 6071, 1985 U.S. Dist. LEXIS 12747 (E.D.Mich. Dec. 16, 1985). Power acknowledges that the Court's broad discretion with respect to awarding enhanced damages would permit it to do as Fairchild suggests. (Tr. at 72) Still, the Court has decided to reject Fairchild's timing suggestion. Under the circumstances presented here, the better approach to account for the differing degree of Fairchild's culpability over time is to award enhanced damages for the entire period, but at an amount less than the full trebling that would be permitted under the statute. It stands to reason that a higher multiplier may be appropriate where an infringer's conduct does not improve or actually worsens over time.

Unfortunately for Fairchild, the evidence about remedial measures is mixed and does not tip the scales in favor of one side or the other. The parties dispute whether Fairchild actually ceased sales of its infringing products, and the record does not provide a clear answer. The record is also unclear as to whether Fairchild continued to ship infringing products into the U.S. after the Court had issued its injunction. (Compare D.I. 777 at 4 with D.I. 762 at 13)

Thus, remedial measures and the duration of the infringing conduct, taken together, are neutral in terms of awarding enhanced damages. On the more refined issue of how much damages should be enhanced, these factors support awarding less than a full trebling of damages.

### 6. Motivation for Harm

■ The line between legitimate competitive behavior in the marketplace and a "motivation for harm" is elusive. Simply because a company seeks to gain a business advantage does not mean that the company has a "motivation to harm." However, the evidence of motivation to harm becomes greater when the patentee and infringer are in direct competition, and the accused infringer's actions are specifically intended to take business away from the patent owner. See Funai Elec. Co., Ltd. v. Daewoo Elecs. Corp., 593 F.Supp.2d 1088, 1116–17 (N.D.Cal.2009) ("[W]here, as here, the infringer engages in infringing conduct to gain an edge over the patentee in a competitive market, this factor favors an award of enhanced damages."); see also Domestic Fabrics Corp. v. Sears, Roebuck & Co., 326 F.Supp.2d 694, 700 (E.D.N.C. 2004) ("A company intentionally undertaking the risk of importing infringing products and engaging in an aggressive strategy unsupported by competent advice of counsel is exactly the type of activity the increased damage reference in the patent law seeks to prevent").

Here, given the circumstances of Fairchild's actions—termed by the Court in its Willfulness Opinion "industrial stalking"—this factor weighs in favor of awarding enhanced damages.

### 7. *Efforts to Conceal Misconduct*

The final *Read* factor is whether the accused infringer attempted to conceal its allegedly infringing activities, either through advertising and selling the products covertly or through concealing evidence of infringing conduct. Power argues that Fairchild continuously changed its infringement and invalidity contentions and suppressed evidence in an attempt to prevent Power and the Court from uncovering the extent of Fairchild's infringing activities.

Specifically, Power argues that Fairchild attempted to conceal sales of its FSD210HD products. Fairchild initially denied that it manufactured any accused products in the U.S., but eventually was forced to acknowledge that it did, in fact, make the FSD210HD in Portland, Maine for some time. Fairchild found it necessary to supplement its interrogatory responses with this information just four months before trial. (D.I. 753 at 18; D.I. 384 at 6–7) To Power, then, it appears that Fairchild either deliberately attempted to conceal its infringing activity or it was careless in investigating and responding to Power's interrogatories.

Fairchild points to evidence that it openly advertised and sold its products, thereby demonstrating that it did not conceal any infringing activity. Fairchild also contends that Power did not initially accuse the FSD210HD of infringement. Fairchild further explains that the company did not know until one of its own witnesses testified in a deposition that Fairchild was manufacturing the accused product in the U.S.

On balance, while Fairchild's behavior does give the Court some reason to pause, the Court concludes that this factor does not favor enhancing damages. There is a dispute over whether Power, after receiving information about the FSD210HD product, actually ended up accusing the product. Fairchild did not attempt to conceal the fact that it sold the products; instead, Fairchild repeatedly issued press releases indicating that it would continue to sell the products on the belief that the lawsuit would resolve in its favor.

In the end, the Court concludes that this factor is neutral in terms of whether to award enhanced damages.

### 8. *Conclusion on Enhanced Damages*

Taking into consideration both jury verdicts, which went against Fairchild for each and every claim; the Court's unequivocal Willfulness Opinion; the parties' submissions; the *Read* factors, and, finally, the rationale underlying enhanced damages, the Court is persuaded that enhanced damages of some amount are appropriate in this case. The factors that favor enhancing damages include Fairchild's deliberate copying, the extent to which Fairchild investigated the scope of the patent, Fairchild's financial condition, Fairchild's motivation for harm, and the non-closeness of the case. The factors that are neutral with respect to enhancing damages include Fairchild's litigation conduct, Fairchild's lack of attempts to conceal, the duration of the misconduct, and Fairchild's remedial measures. No factor weighs against enhancing damages.

The Court is persuaded that there is clear and convincing evidence that Fairchild's conduct is sufficiently culpable to justify enhancing damages. At the same time, the Court is not convinced that this case is sufficiently egregious to justify a full trebling of damages. In this regard, it is important to note that Fairchild's behavior does not appear to have become more culpable and egregious over time.

Thus, the Court, under the totality of the circumstances, will not treble damages but will instead award an increase of doubling the original approximately $6 million dollar award. This enhancement will suffi-

ciently serve the punitive function of enhanced damages.

Therefore, Power's motion for enhanced damages is GRANTED to the extent that Power's damages will be enhanced two times (i.e., 200 percent). Fairchild will be ordered to pay Power damages in the amount of $12,233,441.16.

### B. Attorneys' Fees under § 285

Power argues that Fairchild's conduct is egregious enough to justify not only enhanced damages but also attorneys' fees. The Court disagrees.

■■■■■ The Federal Circuit has made clear that attorneys' fees should be awarded only in "limited circumstances" and are not to become an "ordinary thing in patent litigation." *Forest Labs., Inc. v. Abbott Labs.*, 339 F.3d 1324, 1329 (Fed.Cir.2003). In undertaking a § 285 inquiry, the Court focuses in particular on the actual conduct of the parties during the course of litigating or prosecuting the patent. *See Lightwave Technologies, Inc. v. Corning Glass Works*, 1991 WL 4737, at *13, 1991 U.S. Dist. LEXIS 543, at *39 (S.D.N.Y. Jan. 16, 1991) ("[W]hereas an increase in damages based on willful infringement is based on the need to compensate the patentee and to deter and punish infringers, an award of attorneys fees is based more appropriately on the conduct of the parties during the litigation."). The Court should consider in particular any "bad faith" litigation. *See Finjan Software, Ltd. v. Secure Computing Corp.*, 2009 WL 2524495 (D.Del. Aug. 18, 2009) (refusing to award attorneys' fees in absence of bad faith or vexatious litigation). In other words, the Court may still consider all of the *Read* factors, including copying or closeness of the case, but the focus is more appropriately on the litigation conduct between the parties. *See Std. Oil Co. v. Am. Cyanamid Co.*, 774 F.2d 448, 455 (Fed.Cir.1985) ("Other exceptional circumstances include willful infringement,

misconduct during litigation, vexatious or unjustified litigation, or a frivolous suit").

■■■■ Here, Power points to numerous instances of what it labels "Improper Behaviors" engaged in by Fairchild during the course of the instant litigation. Some of the more serious accusations leveled by Power are that: Fairchild ignored the Court's instruction that Fairchild could not present DMOS as a defense to infringement; Fairchild presented an inappropriate argument regarding the Power patents' validity during the infringement phase of the trial; Fairchild disclosed its infringement and invalidity contentions exceedingly late, well past when they were due and not until after the trial had begun; Fairchild failed to disclose its manufacturing activity throughout the discovery phase; and Fairchild paid a significant sum of money to obtain a "hunting license," the sole purpose of which was to bring a frivolous counter-lawsuit against Power. (D.I. 753 at 11–14)

The Court is not persuaded that Fairchild's tactics amount to bad faith conduct or frivolous pursuit of claims. Aggressive litigation is not necessarily vexatious litigation. Fairchild has an explanation for each of the items cataloged by Power.

Accordingly, Power's motion for attorneys' fees is DENIED.

### IV. Conclusion

For the reasons stated above, Fairchild's motion to amend the findings of fact pursuant to Federal Rule of Civil Procedure 52 is DENIED, Power's request for enhanced damages is GRANTED to the extent that the damages award will be doubled, and Power's request for attorneys' fees is DENIED. An appropriate Order follows.

## ORDER

At Wilmington, this 18th day of January, 2011, for the reasons set forth in the Memorandum Opinion issued this same date,

**IT IS HEREBY ORDERED THAT:**

1. Fairchild's Motion to Amend the Court's Findings of Fact on Willfulness (D.I. 766) is DENIED.

2. Power's Motion for a Declaration that This Case is Exceptional, Treble Damages, and Attorneys' Fees (D.I. 752) is GRANTED in part and DENIED in part. The Court will GRANT Power's Motion for Enhanced Damages pursuant to 35 U.S.C. § 284. The damages award of $6,116,780.58 (D.I. 694) will be doubled. The damages award will therefore be $12,233,441.16. The Court will DENY Power's Motion for a Declaration that This Case is Exceptional and for Attorneys' Fees pursuant to 35 U.S.C. § 285. Each party shall bear its own costs.